JACKSON CIVIL TOWNSHIP ET AL. *v.* DARROW ET AL.

[No. 23,717.    Filed March 17, 1922.    Rehearing denied June 1, 1922.]

1.  DRAINS.—*Establishment.—Second Remonstrance.—Statutes.—* Under Acts 1919 p. 433, providing that in cases pending at the time the act took effect where a two-thirds remonstrance has not been filed, such remonstances may be filed to the report of the drainage commissioners, except in certain cases, a new remonstrance is not authorized, where a remonstrance purporting to be signed by two-thirds of the landowners had previously been filed and not sustained, even though the later remonstrance was signed by persons not originally named by the petition as parties.    p. 138.

2.  DRAINS.— *Establishment.— Pleading Matters in Abatement after Remonstrance.—Statutes.—*Motions to dismiss proceedings for the construction of a drain because other proceedings for the construction of a drain affecting the same territory were pending in other courts are based on matters in abatement, and the motions can be stricken out, under §371 Burns 1914, §365 R. S. 1881, where the moving parties had previously pleaded in bar by filing a remonstrance.    p. 139.

3.  APPEAL.—*Review.—Overruling Motion to Dismiss.—Pleading Matters in Abatement after Plea in Bar.—*Where motion to dismiss drainage proceedings were based upon matters in abatement, and for that reason could properly have been stricken out because filed after the moving parties had pleaded in bar, no reversible error was committed by overruling them after hearing evidence.    p. 139.

4.  DRAINS.—*Establishment.—Drainage of Two River Basins.— Finding that Proposed Drain Constituted Single System.—Evidence.—Sufficiency.—*In a proceeding to establish a drain, a finding that the drainage of two river basins by drains and levees constituted one single system of drainage, *held* sustained by the evidence.    p. 142.

5.  DRAINS.— *Establishment.—Petition.—Sufficiency.—Waiver of Defects.—Failure to Demur.—*Defects in a petition for the construction of a drainage system are waived where no demurrer was filed thereto.    p. 143.

6.  APPEAL.—*Record.—Recitals of Testimony in Motion for New Trial.—Absence of Bill of Exceptions.—Questions Reviewable.* —Recitals of the testimony of witnesses in the motion for new trial and exhibits filed therewith do not establish the truth of what is recited therein, and in the absence from the record of a bill of exceptions. containing the evidence, no question requiring a consideration of the evidence can be reviewed.    p. 143.

7. APPEAL.— *Presenting Questions for Review.— Questions of Fact.*—A judgment will not be reversed for error in ruling upon questions of fact unless the record affirmatively shows that all the evidence upon which ruling was based is before the court on appeal. p. 143.

From Laporte Superior Court; *Robert M. Van Atta,* Special Judge.

Proceedings, on petition of Lemuel Darrow and others, for the establishment of a drain. From a judgment for petitioners, Jackson Civil Township and others appeal. *Affirmed.*

*Oscar B. Smith, Charles S. Lundin, Orville W. Nichols, James C. Fletcher* and *Charles Hamilton Peters,* for appellants.

*William J. Reed, Earl Rowley, Lemuel Darrow* and *Quincy A. Myers,* for appellees.

EWBANK, C. J.—A petition was filed in the superior court of Laporte county, Indiana, asking to widen and deepen an existing dredged ditch along the course of the Kankakee river on the boundary line between Starke and Laporte counties a distance of twenty miles or more northeastwardly from the Porter county line, and to widen and deepen the channel of Yellow river from a point near the town of Knox to its junction with the Kankakee, and to build levees on each side of the proposed ditches thus to be dug, and also to construct a lateral ditch ten miles long in Laporte county, emptying into the Kankakee river below its junction with Yellow river. What purported to be a remonstrance by two-thirds of the landowners affected was filed July 24, 1915, on which the court found against the remonstrators. On June 6, 1919, within twenty days after an amendment of §3 of the drainage law (Acts 1919 p. 433) took effect, another remonstrance was filed, signed by 3,300 landowners who claimed to be two-thirds of those affected.

The court struck out the latter remonstrance, to which appellants excepted, and have assigned the ruling as error.

That part of the act of 1919, *supra*, relied on by appellants reads as follows: "Provided, that in cases pending at the time of taking effect of this act 1. where a two-thirds remonstrance *has not been filed*, such remonstrances may be filed to the report of the drainage commissioners, except" in certain cases not here involved (Our italics). Acts 1919 p. 433.

As such a remonstrance had been filed in this proceeding in 1915, a second one filed in 1919 was not authorized by the language quoted, even though the latter was signed by persons not originally named by the petition as parties. Therefore it is not necessary to consider and we do not decide whether or not the fact that the later act was merely a re-enactment of language contained in the act of 1907, there used with reference to drainage proceedings begun under an earlier statute which did not provide for filing a "two-thirds remonstrance," would have prevented such language from having any application, even if a prior remonstrance had not been filed.

Appellant, Samuel A. Craigmile, was not a party to the original petition, but was first brought in as a party by a report of the drainage commissioners, filed November 30, 1918. On December 10, 1918, he (as well as others) filed a remonstrance. On December 27, 1918, said Craigmile filed a verified "motion to dismiss proceedings," which alleged that certain other actions for the construction of proposed drainage improvements were pending in the circuit courts of Starke and Laporte counties, respectively, at the time the petition in this action was filed, and that because of such facts those courts had prior jurisdiction over so much of the work of drainage reported by the commissioners in this action

as deprived the Laporte Superior Court of jurisdiction to proceed. Certain other appellants who had previously filed remonstrances also filed similar verified motions. After hearing evidence for two weeks the court overruled all of these motions, and exceptions were reserved, and this ruling is assigned as error.

These "motions to dismiss" were based wholly upon matters in abatement. Having previously pleaded in bar of the action by filing remonstrances, the appellants were not entitled to plead matters in abatement, and the court might have struck out and rejected the "motions" without error. §371 Burns 1914, §365 R. S. 1881; *Watts* v. *Sweeney* (1891), 127 Ind. 116, 126, 26 N. E. 680, 22 Am. St. 615; *Carmien* v. *Cornell* (1897), 148 Ind. 83, 89, 47 N. E. 216. Therefore no reversible error was committed by refusing to sustain them, after hearing evidence.

The statute under which this proceeding was begun, and as it has been amended, expressly authorizes the drainage commissioners, in laying out a system of drainage, "to determine that the method of drainage shall be by removing obstructions from a natural or artificial watercourse; or diverting such watercourse from its channel, by deepening, widening or changing the channel of such watercourse; *by constructing an artificial channel, with or without arms or branches; * * * by constructing levees or dykes; or by any or all of such methods combined*" (Our italics). §6142 Burns 1914, Acts 1907 p. 508; Acts 1919 p. 433; See Acts (Sp. Sess.) 1920 p. 26. And the power of the court to consolidate with the original petition any supplemental petitions asking for additional drainage improvements which, when completed, will constitute part of the same system of drainage is expressly recognized by the statute. §6148 Burns 1914, Acts 1907 p. 508, §8.

The original petition asked for the drainage of the

lands along the Kankakee and Yellow rivers, for some distance above and five or six miles below their confluence, by constructing dredge ditches of a designated size along the course of their existing channels, so as to widen and deepen them, and building a "continuous and unbroken levee without any openings therein" for a considerable distance on either side of the channels as thus constructed, and running an arm into the main channel from the north, below the point of confluence. The plan, as reported by the drainage commissioners and established by the judgment appealed from, provides for, (a) an unbroken levee on the northwest side and within a short distance from the main channel of the Kankakee river, from a point four or five miles above where the Yellow river flows into it from the east to the proposed "outlet," five or six miles below their confluence; (b) digging a diversion ditch immediately outside of that levee, parallel with the channel of the Kankakee river, only a few rods from that channel, and inside the "meander line" of the river basin as run by the United States survey, which diversion ditch will empty into the existing channel of the Kankakee river at the "outlet" of the proposed "system," five or six miles below the confluence of the two rivers; (c) building certain arms flowing into this diversion ditch from the north and west; (d) the construction of a new channel for the Yellow river from a point about eight miles above such confluence to a point within the "meander line" of the Kankakee river basin, and thence parallel with the existing channel of that river, less than half a mile from it, following the general course of the "meander line" which bounds its original basin on the southeast, five or six miles to the "outlet," where it will join the channel of the Kankakee river; (e) building a levee immediately east of and parallel with this chan-

nel from such confluence to the "outlet;" (f) digging a diversion ditch just outside of this levee, parallel with and a few rods from the new channel thus provided for the Yellow river, from its confluence with the Kankakee river to the "outlet" of the system, where it also will empty into the Kankakee; (g) building certain arms flowing into this diversion ditch from the south and east; (h) the two levees, on the northwest side of the Kankakee river channel and on the southeast side of the new Yellow river channel, respectively, from the confluence of the two rivers to the "outlet," being made to enclose between them a strip of flat land nearly half a mile wide in which the flood waters of the Kankakee and Yellow rivers will mingle whenever they overflow the banks of their dredged channels, the levees on either side to form flood water banks for the combined stream; (i) building levees a few rods apart, bordering each side of the new channel dug for the Yellow river, from the levees on the east side of the Kankakee at the confluence of the two streams to connect with railroad embankments already built several miles farther east.

The following map or plan, on page 142, while not drawn to scale nor very accurate, will illustrate the proposed improvement as finally established.

It will be observed that this does not provide for widening, deepening, straightening or otherwise changing the existing channel of the Kankakee river. It leaves that channel just as it was before, but provides for digging three other ditches and building two levees, parallel with it, within the basin of the river as originally meandered by the United States survey, all of which are designed to help carry off, along that basin, the water which would naturally flow to the Kankakee river.

Appellants insist that the proposed drains and levees, as thus laid out, constitute two separate systems of

drainage, one in Laporte county and the other in
4.    Starke county, without any connection except
that both empty into the Kankakee river from
opposite sides, near the same place.    And from this
premise they argue that the superior court of Laporte
county was without jurisdiction to order the improve-

TUESBURG DRAINAGE AND RECLAMATION SYSTEM

ment, especially that part of it southeast of the Kanka-
kee river in Starke county.    But a plan by which the
waters draining into the Kankakee river basin will be
carried off along that basin by four ditches in dry
weather, and confined within such basin between two
levees at flood stage, except that the rain which falls
outside the levees is to be conveyed away by diversion

ditches dug beside and parallel with the levees, is as much a single plan for the drainage of that portion of the Kankakee river valley as one would be which provided for digging a single channel large enough to carry all the water. The trial court expressly found that the proposed drains, arms, diversion ditches and levees, as set forth in the report of the drainage commissioners, constitute one single system of drainage, and we think the facts justified the finding, and that the court had jurisdiction to establish the work as a whole, and to order it constructed.

The sufficiency of the facts alleged in the petition and in different supplemental petitions is challenged by assignments of errors, but as no demurrers were 5. filed to any of them, all defects therein were waived. *Shields* v. *Pyles* (1912), 180 Ind. 71, 77, 99 N. E. 742.

Many questions are discussed by counsel which could only be decided from a consideration of the evidence. But no bill of exceptions was filed, and the only 6, 7. evidence recited in the transcript consists of a few pages of what purports to be extracts from the testimony of witnesses, attached to the motion for a new trial and filed with it as an exhibit. The recitals of the motion for a new trial and exhibits filed with it cannot be accepted as establishing the truth of what is therein recited. *Louisville, etc., R. Co.* v. *Miller* (1895), 141 Ind. 533, 558, 37 N. E. 343; *Heath* v. *State* (1910), 173 Ind. 296, 300, 90 N. E. 310, 21 Ann. Cas. 1056. And this court cannot reverse a judgment for error of the trial court in ruling upon a question of fact unless the record affirmatively shows that all the evidence upon which such ruling was based is before the court on appeal. *Henry* v. *Bevis* (1915), 184 Ind. 78, 110 N. E. 545.

The judgment is affirmed.