Luciano C. RAYMUNDO,
Defendant-Appellant,

v.

HAMMOND CLINIC ASSOCIATION,
Plaintiff-Appellee.

No. 583 S 188.

Supreme Court of Indiana.

May 31, 1983.

Fred M. Cuppy, Gerald K. Hrebec, George W. Carberry, Merrillville, for defendant-appellant.

Robert F. Peters, Lucas, Clifford & Holcomb, Merrillville, for plaintiff-appellee.

PRENTICE, Justice.

This cause is before us upon the petition of the Hammond Clinic Association (Plaintiff-Appellee), hereinafter called "Clinic," to transfer the cause from the Court of Appeals, Third District, which reversed the trial court's grant of summary judgment in favor of the Clinic. Said decision of the Court of Appeals is found at *Raymundo v. Hammond Clinic Association,* (1980) Ind.

App., 405 N.E.2d 65. The Petition to Transfer is now granted pursuant to Ind.R. App.P. 11(B)(2)(c) in that said decision is in conflict with the decision and opinion rendered by said court in *Podgorny v. Great Central Ins. Co.,* (1974) 160 Ind.App. 244, 253, 311 N.E.2d 640, 647 which correctly held that affidavits in support or opposition to motions for summary judgment "must be made on personal knowledge, shall show that the affiant is competent to testify to the matters included, and must set forth *such facts as would be admissible in evidence. The assertion of conclusions of law or opinions by one not qualified to testify to such, by affidavit, will not suffice.*" (Emphasis added).

Said decision of the Court of Appeals also contravenes a ruling precedent of this Court in that it reversed the judgment of the trial court upon a record which omitted matter material to the judgment, whereas it is the responsibility of the appellant to present a record that reveals the error complained of. *Stubblefield v. State,* (1979) 270 Ind. 421, 422, 386 N.E.2d 665, 667; *Jackson Civil Twp. v. Darrow,* (1922) 192 Ind. 136, 143, 134 N.E. 779, 782. The review of the grant or denial of a motion for summary judgment is not unlike a review on a claim of insufficient evidence. "When the sufficiency of the evidence is challenged, the burden is upon the [appellant] to convince the reviewing court that the evidence is insufficient. The court cannot come to such a conclusion from a record that omits a portion of the evidence for the obvious reason that the omitted evidence may furnish the missing link, as it apparently did in the instant case." *Cato v. State,* (1979) Ind., 396 N.E.2d 119, 121. *Accord Swiggett v. Swiggett,* (1958) 237 Ind. 541, 543, 147 N.E.2d 220, 221 (per curiam).

The trial court granted the Clinic's motion for summary judgment and awarded liquidated damages in the sum of $25,000.00 upon a record of agreed facts revealing that Dr. Raymundo, after contracting for a five (5) year term as a partner and not to compete in the Clinic's service area, in the event he withdrew, had breached both the term of

service and the covenant not to compete, after two and one half years of service as an orthopedic physician and surgeon and had commenced the practice of such specialty in competition with the Clinic. The Court of Appeals erroneously reversed the judgment of the trial court. The aforesaid decision and opinion of the Court of Appeals is now ordered vacated.

The Clinic, a partnership of more than fifty (50) physicians and surgeons located in Munster, Lake County, Indiana, services the general area of Hammond, which Munster adjoins. Dr. Raymundo (Defendant-Appellant), a physician and surgeon engaging in the practice of orthopedic medicine and surgery in the same general area as the Clinic, also has his office in the Town of Munster.

The Clinic was organized in 1958. In 1968, the association agreement was amended to include a covenant by all partners, except those designated as "full partners", not to compete. Said covenant is as follows:

"D. In the event that any member of the Association, other than a member who receives 100% of the compensation paid to a full Partner, shall withdraw from the Association as provided for in this Article, then and in that event said Party covenants and agrees that he shall not, for a period of two (2) years from the effective date of his withdrawal from the Association, carry on or engage directly or indirectly in the practice of medicine within a 25-mile radius of the City of Hammond, Indiana, provided, however, that said 25-mile radius shall be confined to the State of Indiana and the cities of Calumet City and Lansing, Illinois."

Dr. Raymundo came to the Clinic, as an employee in late 1971, after having completed his advanced training in the State of Michigan. He had no prior experience in Indiana and was not acquainted in the medical community of the area. After working with the Clinic, as an employee/physician, for approximately one year, he was invited to become a partner, and on December 30, 1971, the parties executed an agreement effecting such change of status,

effective January 1, 1972. Under such agreement, Dr. Raymundo was to be remunerated, for the first seven months as a partner at the rate of 50% of the remuneration paid to full partners. His remuneration was then to be increased to 55% for the first full year thereafter, 65% for the second full year, 85% for the third year, and 100% for the years thereafter.

The agreement further made reference to the aforementioned covenant not to compete, which by its terms would operate to restrict Dr. Raymundo for the first three and one-half years of his tenure, as a partner, and provided for liquidated damages, as follows:

"6. In the event that the Second Party shall violate the provisions contained in Paragraph D of Article XVI of the Articles of Association of the Hammond Clinic, as set forth in Supplemental Agreement No. 20, then and in that event the Parties agree that the Second Party shall pay to the First Party as liquidated damages for the breach of said provisions the sum of Twenty-five Thousand Dollars ($25,000.00) if the breach occurs during the first twelve (12) months of the two (2) year period and the sum of Fifteen Thousand Dollars ($15,000.00) if the breach occurs during the second twelve (12) months of the two (2) year period. [R. 33–4]

Dr. Raymundo practiced as a Clinic partner from January 1, 1972 until July 10, 1974, at which time his remuneration was 65% of that of a full partner; and on that date he withdrew from the Clinic and began his independent practice within the protected area. The Clinic filed suit against him in three paragraphs—(1) to enjoin his continued practice in the restricted area, (2) for liquidated damages for breach of the covenant not to practice in such area, and (3) for an accounting of and to recover money allegedly collected and wrongfully withheld from the Clinic prior to his withdrawal. However, we are here concerned only with the paragraph seeking damages, paragraph No. (1) having become moot with the passage of time, during the pendency of the

action in the trial court, and paragraph No. (3) not yet having progressed to judgment.

As to Paragraph No. (2), the count for liquidated damages, the trial court sustained the Clinic's motion for summary judgment and awarded damages in the liquidated amount with interest and costs. By its motion to correct errors and the pending appeal from an adverse ruling thereon, Dr. Raymundo assigns errors presenting the following issues:

(1) Was the covenant not to compete unenforceable, as a matter of law, by reason of being overly broad and in restraint of trade or as being inimical to the public interest?

(2) Was there any genuine issue of fact material to the determination of Dr. Raymundo's liability?

I

Dr. Raymundo contends that the covenant not to compete is violative of Indiana's Anti-Restraint of Trade Statute, Ind. Code § 24–1–2–1 (Burns 1973) (since amended) then in effect. The case law, however, is against him. *Bennett v. Carmichael Produce Co.,* (1917) 64 Ind.App. 341, 115 N.E. 793. *Bennett* demonstrates that a non-competition agreement is not violative of the statute simply because it may, coincidentally, effect some restraint. Rather, the statute was intended to prohibit contracts in general restraint. Here, as in *Bennett,* the covenant did nothing more than protect the Clinic's goodwill against piracy by a mutinous partner.

Dr. Raymundo has cited a number of cases from other jurisdictions holding such covenants as his to be in violation of the statute; however, each of such cases was decided upon the basis of unique statutory language which is quite different from that of the Indiana Statute.

With respect to Dr. Raymundo's claim that the covenant is inimical to the public interest and unenforceable as a matter of public policy, he has not supported his claim with cogent argument or authority as to why a physician's agreement not to compete should be treated differently, as a matter of public policy, than that of other business or professional people. His comments that it is in the public interest for physicians, as a group, to determine their code of conduct and ethical standards, that enforcement of such covenants may inflict a hardship upon the covenantor and that the public may thereby be denied medical services are unpersuasive in the light of the public interest in the freedom of individuals to contract.

" * * * In the absence of a showing that any particular contract brought before the court is contrary to what the constitution, the legislature or the judiciary have declared to be the public policy, it is necessary in order to have the court hold it void on the ground of public policy, to show clearly that such contract has a tendency to injure the public, or is against the public good or is inconsistent with sound policy and good morals as to the consideration or as to the thing to be done or not to be done. Whether or not a contract is against public policy is a question of law for the court to determine from all of the circumstances in a particular case. The courts will keep in mind the principle that it is to the best interest of the public that persons should not be unnecessarily restricted in their freedom of contract and that their agreements are not to be held void as against public policy, unless they are clearly contrary to what the constitution, the legislature, or the judiciary have declared to be the public policy or unless they clearly tend to the injury of the public in some way." *Hodnick v. Fidelity Trust Co.,* (1932) 96 Ind.App. 342, 350, 183 N.E. 488, 491.

II

Dr. Raymundo acknowledges that the ultimate determination of the reasonableness of a restrictive covenant is a question of law but cautions that its reasonableness must, nevertheless, rest upon adequate facts. *Waterfield Mortgage Co. v. O'Connor,* (1977) 172 Ind.App. 673, 677, 361 N.E.2d 924, 926. He claims that the Clinic failed in its burden to demonstrate the absence of a genuine issue of material fact.

"We have stated many times that motions for summary judgment are properly granted only when the pleadings and other matters of record reveal that there is no genuine issue or dispute as to a material fact and that the moving party is entitled to judgment as a matter of law. To determine whether such issues exist, the court must accept as true those facts alleged by the nonmoving party and resolve all doubts against the moving party. The granting of a motion for summary judgment is not appropriate if the trial court must weigh conflicting evidence to reach a decision, or even if there are conflicting inferences which may be drawn from undisputed facts. 'However, despite conflicting facts and inferences on some elements of a claim, summary judgment may be proper where there is no dispute or conflict regarding a fact that is dispositive of the litigation.'" (Citations omitted). *Barnd v. Borst,* (1982) Ind.App., 431 N.E.2d 161, 164–65.

On appeal, however, the burden of showing reversible error is upon the appellant, in this case, Dr. Raymundo. All reasonable presumptions are indulged in favor of the rulings and judgment of the trial court, and the record must reveal the error assigned as the basis for the reversal sought. The reviewing court will not presume anything in favor of the claim of error. *N.Y. Central Ry. Co. v. Milhiser,* (1952) 231 Ind. 180, 189, 106 N.E.2d 453, 458, *Rehearing denied,* (1952) 231 Ind. 202, 108 N.E.2d 57.

With these standards of review in mind, we proceed to a consideration of Dr. Raymundo's claims.

While posturing this portion of his appeal as a claim that there were issues of material facts that precluded the grant of summary judgment, much of Dr. Raymundo's brief is a charge that the judgment of the trial court is contrary to law, and we have been hampered somewhat by his failure to distinguish between evidentiary facts and conclusions of law. We find no genuine issue of fact. The reasonableness of the covenant, in several particulars, has been erroneously challenged as an issue of fact.

The ultimate determination of whether a noncompetition covenant is reasonable is a question of law. *Frederick v. Professional Bldg. Main. Indus., Inc.,* (1976) 168 Ind.App. 647, 648, 344 N.E.2d 299, 301; *Waterfield Mortgage Co., Inc. v. O'Connor, supra.* It follows that the reasonableness of such an agreement in each and every aspect is a question of law. Thus, whether or not such a covenant was reasonably necessary is a question of law; whether or not the geographic limitations were reasonable is a question of law, and whether or not the time limitations were reasonable is a question of law.

Dr. Raymundo contends that there were issues of material fact upon the issue of whether or not the Clinic had a legitimate business interest to protect and upon the issue of whether or not the covenant was reasonably necessary to protect such interest, if it did exist.

Upon the question of a protectible interest, although purporting to argue the existence of material fact issues, Dr. Raymundo devotes his brief to the argument of policies and conclusions of law. He asserts that a genuine issue of material fact exists as to whether the Clinic had any protectible interest in its goodwill and then proceeds to argue that it is not justifiable for medical doctors to protect goodwill because the ethics of the profession afford them ample protection. To be a "genuine issue of fact" within the meaning of summary judgment rules, the claim must have legal probative force. *Schwartz v. United States,* (N.Dak. 1965) 38 F.R.D. 164, 165. Although the burden of proving the nonexistence of a genuine issue of material fact is upon the party moving for summary judgment, Ind. R.Tr.P. 56(E), nevertheless, requires the party against whom summary judgment is sought to come forward with probative facts (evidence) to controvert a showing by the movant that no triable issue of fact exists for adjudication.

Dr. Raymundo argues, under this section of his brief, that public policy precludes

medical doctors from entering into or enforcing non-competition covenants. In fact, this is the common thread that runs throughout the arguments of his brief. He suggests that this case is different, because it involves the medical profession or that he is, somehow entitled to special treatment, because he is a physician and there is great need for his services. This self-serving position, however, cannot be upheld.

It appears that the enforceability of non-competition covenants has not been previously decided in this state, with respect to physicians. They have been upheld generally in other jurisdictions, however, and we see no reasons of public policy for holding them to be invalid per se.

Dr. Raymundo next argues that the restrictive covenant was not reasonably necessary to protect the Clinic's interests, but he has not pointed us to any material fact in dispute relevant to a resolution of that issue. It is immaterial that full partners of the Clinic were not subject to the same restriction, and it is immaterial that he was not subject to it during his prior term as an employee.

Dr. Raymundo next contends that was a genuine issue of material fact as to the parties' service area and the reasonableness of the covenant's geographic limitation.

The reasonableness of the agreement in this respect is dependent upon the area serviced by the Clinic, the area serviced by Dr. Raymundo as a partner of the Clinic, and the area sought to be restricted. Dr. Raymundo here contends that there was no factual basis from which the court could determine that the Clinic rendered substantial services throughout the area sought to be restricted and that the Clinic had not attempted to demonstrate the geographic area in which Dr. Raymundo worked. These assertions border on being misrepresentations.

The record reflects that, to assist the court in its determination, the Clinic, on February 23, 1978, filed with the trial court a complete and verified computer "printout" disclosing the names and addresses of its patients at the time in question—numbering approximately 50,000. Because of its bulk and the lack of facilities of the clerk, the court entered an order incorporating said "print out" as a part of the record but authorized counsel to remove it physically, until further order. Obviously, it was from this exhibit that the court determined the area serviced by the Clinic, and by Dr. Raymundo, as one of its physician partners. Yet, neither this exhibit, nor any substitute for it has been included in the record before us. Notwithstanding that the Clinic has brought such omission to the attention of Dr. Raymundo and this court by the affidavit of the trial court judge appended to its brief, he has made no effort to correct the record.

█ It is the duty of the appellant to present this Court with a proper record evidencing the error claimed. *Stubblefield v. State, supra; Jackson Civil Twp. v. Darrow, supra.* Both of these cited cases point out that we cannot reverse a judgment for error alleged in a ruling dependent upon facts not before us.

Dr. Raymundo also points to the following allegation contained in his affidavit filed in opposition to the Clinic's motion for summary judgment: " * * * and that the Hammond Clinic does not render substantial medical service to patients throughout * * * " (the area of the covenant.) He contends that this assertion created a genuine issue as to a material fact, but he is incorrect. The rule requires that an adverse party must respond to the motion by setting forth *specific facts.* To say that the Clinic does not render *substantial* medical service in the area is not a statement of a specific fact. Rather, in the context of this case, it is a mere statement of a conclusion. In context the word "substantial" denotes that degree of services rendered in the area that would entitle the Clinic to protect its interest therein by the restrictive covenant and thus render the use of such a restriction *reasonable,* hence *lawful.* It was, therefore, a matter for the judge to determine:

"Plaintiff has attempted to create factual issues by the conclusions drawn in the

answers to requests for admissions of fact and summaries of facts contained in his briefs of law. But transparent contentions, mere pleading allegations, and self-serving unverified statements of facts, as opposed to the movant's controverting evidentiary materials cannot defeat a motion for summary judgment." (Citations omitted) *Davis v. Henderlong Lumber Co., et al.,* (N.D.Ind.1963) 221 F.Supp. 129, 135.

Dr. Raymundo filed no denial of the authenticity or correctness of the computer print-out, which stands as an allegation of fact, as opposed to his prior statement of a mere conclusion. There was, therefore, no issue of fact in this particular.

The Clinic further filed an affidavit on March 15, 1973, that "Dr. Raymundo's area of practice and geographical service area of his patients were the same as the Hammond Clinic generally." Neither was this denied by Dr. Raymundo, hence there was no issue of fact upon this matter. He now points to the admission of the Clinic that Dr. Raymundo performed services in but four hospitals and argues that inasmuch as there were additional hospitals where he did not operate, his area of service was not co-extensive with the area of the covenant. This position is without merit. Obviously we are concerned with the area from which the Clinic drew its patients and not the location of the hospital or hospitals where it performed its treatment and surgery.

■ In any event, by omitting from the record before us material that the trial court had before it in determining the general service area of the Clinic and of Dr. Raymundo, he has precluded us from passing upon those issues.

Dr. Raymundo also contends that summary judgment was improper because, "Taking the facts in Dr. Raymundo's affidavits as true, it was established that there were 'portions of Lake County which were not served by the Hammond Clinic * * *.'" There was an allegation of fact to that effect which apparently was not refuted, hence it must be deemed true for purposes of the summary judgment. However, we are aware of no authority indicating that in order for a covenant to be reasonable, the covenantee must show that it had rendered its service or sold its product in every nook and cranny of the protected area. Were it otherwise, no such covenant could ever stand.

Dr. Raymundo next argues that there was a genuine issue of fact with respect to whether or not he signed the agreement under duress but we see no such issue. We do note that, by his brief, Dr. Raymundo asserts that the "Clinic *compelled* him to sign the covenant not to compete." However, his only support for this contention is an allegation from his affidavit of Feb. 21, 1978 made in opposition to the Clinic's motion " * * * that the plaintiff-Clinic refused to distribute to him his earnings or other remuneration until he signed the restrictive covenant * * *." Without more, such allegation could not raise an issue of duress. There has been no allegation that the Clinic's alleged refusal to distribute Dr. Raymundo's earnings was in any way connected with the negotiation of the terms of the partnership agreement—no claim that the Clinic conditioned payment upon executing the agreement nor any claim that, but for such withholding, Dr. Raymundo would not have signed the agreement; and we cannot but observe that although Dr. Raymundo filed four affirmative answers to the Clinic's complaint, "Duress" was not among them.

■ Even if the execution of the agreement had been induced by the alleged withholding of his earnings, Dr. Raymundo has cited no authority that "economic duress" would suffice as a basis for nonperformance of a contract. The threat to breach a contract of employment, which appears to us to be analogous to the Clinic's alleged threat to withhold Dr. Raymundo's wages, which might be aptly termed "economic duress," has been held not to conform "to the Indiana definition of duress: an actual or threatened violence or restraint of a man's person, contrary to law, to compel him to enter into a contract." *Williamson v. Bendix Corp.,* (7th Cir.1961) 289 F.2d 389,

392. " * * * [T]here is no doubt that the modern tendency of courts of law is to regard any transaction as voidable which the party seeking to avoid was not bound to enter into and which was coerced by fear of a wrongful act by the other party to the transaction. The earlier requirements of common-law duress may be regarded as merged into this broader definition." 5 Williston on Contracts § 1603, (1937). However, although the law may now recognize instrumentalities of duress that were not previously viewed as such, the basic concept of the doctrine is the same; and the ultimate fact to be determined is whether or not the purported victim was deprived of the *free exercise of his own will.* Mere threats, which fall short of subverting the will, cannot constitute duress. There was no duress vitiating a contract where the purported victim acted freely and voluntarily, and where a contract was induced, not by a loss of volition, but by a desire to avoid inconvenience or delay, duress was not present. 17 C.J.S. Contracts § 168, pp. 948–49 (1963).

Finally, it is elementary that a contract induced by fraud or duress is not void but only voidable. It is undisputed that Dr. Raymundo accepted the benefits of the contract for approximately two and one-half years. A party may not claim benefits under a transaction or instrument and, at the same time, repudiate its obligations. *Caito v. Indianapolis Produce Terminal, Inc.,* (1974) 162 Ind.App. 590, 596, 320 N.E.2d 821, 825.

Dr. Raymundo's next argument is also difficult to follow. He charges that a genuine issue of material fact exists with respect to the validity of the contract provision for liquidated damages. Again, he points to no fact in dispute with respect to the matter but asserts that the provision is, in fact, a penalty rather than a provision for damages, hence unenforceable. We will regard the matter as an assignment that the judgment is contrary to law because the contract provision, hence the award, was for a penalty rather than for liquidated damages.

Indiana law clearly recognizes that contracts not to compete are especially adapted to liquidated damages provisions.

"We recognize the rule that where the sums ought to be fixed as liquidated damages is grossly disproportionate to the loss which may result from the breach or is unconscionably in excess of the loss sought to be averted, the Courts will treat the sum as a penalty rather than as liquidated damages.

   \*    \*    \*    \*    \*    \*

"The certainty or uncertainty of the actual damages which a breach of contract will occasion and the ease or difficulty of ascertaining or proving them are important matters to be considered in the determination of whether the sum named is liquidated damages or a penalty. It may be said that if the actual damages are uncertain or difficult to ascertain or prove or are of a purely speculative character and the contract furnishes no data for their ascertainment, the provision will, as a general rule, be held to be one for liquidated damages, at least if the sum contracted to be paid does not appear to be unreasonable in amount.

   \*    \*    \*    \*    \*    \*

"Appellants urge that 'it is for a sum absolutely fixed whether the breach be trivial or not—whether it be committed soon or just one day before the end of the five years.' This is but to argue how much damages would actually flow from a breach of the contract. It is true that the loss may be great or small, but we have no way of ascertaining the amount without entering the realm of pure speculation, and, as we have heretofore said, it is the element of uncertainty in the ascertainment of the amount of damages which gives rise to characterizing the amount as liquidated damages.

   \*    \*    \*    \*    \*    \*

"Contracts not to engage in a particular business or profession belong to that class of cases which is expressly adapted to stipulation for liquidated damages, because it is practically impossible to fix the

exact amount of damages resulting from a breach of the agreement."

*Beiser v. Kerr,* (1939) 107 Ind.App. 1, 8, 9, 10, 11, 20 N.E.2d 666, 669–70.

The *Beiser* case makes it clear that in the case of the liquidated damages clause for violation of a restrictive covenant not to compete, the usual presumption against a fixed amount of damages being enforceable does not apply. This case tells us that the Court will almost always uphold such a clause as a valid liquidated damages clause unless the amount is grossly disproportionate to the loss and far beyond any possible damages that could be incurred.

The Clinic consisted of more than fifty physicians functioning in essentially all areas of the medical practice. Although we like to think of such institutions as altruistic and benevolent health care providers, realistically we must recognize that they are also business ventures operating in the free enterprise system. Obviously, at the time the agreement was entered into, the Clinic anticipated some financial gain from Dr. Raymundo's affiliation as a partner for an agreed period of five years. It was altogether reasonable to assume that if he did not complete the term, it would encounter definite expense and losses of revenue pending his replacement. It is also reasonable to assume that patients, whom the Clinic would otherwise expect to serve, for a fee, would be lost. The amount of such anticipatory expenses and losses is not susceptible of determination—either before or after the fact. Yet they are almost certain to occur. The uncontroverted facts are that in the year 1974 the Clinic had gross revenues of $8,277,771.00 and that of this, the orthopedic department, of which Dr. Raymundo was one of three physicians, produced $384,595.00. It was also uncontroverted that of the last mentioned sum, Dr. Raymundo produced $103,262.00, although he was attached to the Clinic for but slightly over half of the year. In light of the enormity of such income and expense figures, it cannot be said that the agreed sum of $25,000.00 exceeded the pale of liquidated damages and was, in fact, a penalty.

We find no error. The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.