**CENTRAL INDIANA PODIATRY, P.C., Appellant–Plaintiff,**

v.

**Kenneth J. KRUEGER, Meridian Health Group, P.C., Appellee–Defendant.**

No. 29A05–0606–CV–313.

Court of Appeals of Indiana.

Jan. 9, 2007.

James A. Knauer, Steven E. Runyan, Kroger, Gardis & Regas, LLP, Indianapolis, IN, Attorneys for Appellant.

Joseph J. Reiswerg, Indianapolis, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge.

*STATEMENT OF THE CASE*

Central Indiana Podiatry ("CIP") appeals the trial court's order denying a

preliminary injunction to CIP on its action asserting that Kenneth Krueger, D.P.M., violated the restrictive covenants contained in the employment contract between CIP and Krueger.

We reverse.

## ISSUE

Whether the trial court erred when it did not grant the preliminary injunction sought by CIP.

## FACTS

In early 1996, Krueger was practicing podiatry in the Nora area of Indianapolis and in Frankfort. Krueger's practice experienced "some financial troubles." (Tr. 24). CIP "took over all [Krueger's] liabilities," including the mortgage on his building in Frankfort and his malpractice insurance premiums, and entered into a March 1996 employment agreement with Krueger that "guaranteed him an income." (Tr. 63). Krueger entered into a subsequent employment contract ("the Contract") with CIP on April 14, 1998.

The Contract had a two-year term and was renewable for one-year terms. The Contract contained non-compete restrictions, which were similar to those contained in CIP's contracts with other podiatrists it employed and which were effective for a period of two years from the date of termination of his employment with CIP. Specifically, "to avoid disputes in the future, and in consideration for entry into" the Contract, Krueger "agree[d]" to (1) "not divulge the name of any patient ... to any third party and ... not contact such persons for the purpose or with the intent of providing podiatric services"; (2) "not engage, directly or indirectly, in the prac-

tice of podiatry or podiatric surgery within" fourteen named Indiana counties or counties adjacent to those; and (3) not "employ or solicit for employment" any CIP employee. (App.258). The Contract further provided that it could be terminated by CIP "immediately for cause, which shall include, but not be limited to ... misconduct ... of [Krueger]." (App.251). The Contract also provided that "[a]ll patients" seen at CIP offices "shall be deemed to be the patients of [CIP] and not personal patients of [Krueger]." (App. 252). The Contract was renewed annually from 2000 through 2005.

From 1996 until the summer of 2005, Krueger worked in CIP offices located in Frankfort (Clinton County), the Indianapolis metropolitan area (Marion County), Kokomo (Howard County), Lafayette (Tippecanoe County), and Carmel (Hamilton County). Before his termination in the summer of 2005, Krueger was working three days a week at the Nora office in Marion County, one day a week at the Lafayette office, and one day a week in the Kokomo office.

In April of 2005, CIP employee H.H. complained that Krueger had kissed her while they were working in the Kokomo office. CIP employed counsel to investigate. Krueger met with the attorney and admitted not only the incident with H.H. but also that "there was another incident with" M.R., another CIP employee, that involved "some sort of touching." (Tr. 42). After the meeting, Krueger suspected he was going to be terminated, and he obtained from a CIP employee a list in electronic format of his Nora patients.[1] On July 25, 2005, CIP terminated Krueger's employment for cause—specifically, "misconduct in connection with" his employ-

---

[1] He neither sought nor obtained a list of the patients he was seeing in the Kokomo and    Lafayette offices of CIP.

ment duties and his responsibility "to treat ... office medical staff in a professional and dignified manner." (Tr. 69).

In early September 2005, Krueger and Meridian Health Group ("Meridian") began negotiating for his employment there as a podiatrist. At the end of September, Krueger and Meridian executed an employment agreement, and Krueger provided a list in electronic format of his Nora CIP patients. Letters dated September 30, 2005, on letterhead indicating "Meridian Health Group ... Kenneth J. Krueger, D.P.M.," were sent to the Nora CIP patient list. (Ex. 6). The letters were signed by Krueger and announced that "beginning October 17th," he would be practicing "the specialty of Podiatry" with Meridian at a specified location "approximately 10 minutes from [his] previous office." *Id.*

A patient informed CIP of the letter about Krueger's practice at Meridian. On October 14, 2005, CIP filed a complaint against Krueger and Meridian—requesting a temporary restraining order, a preliminary injunction, and permanent injunctive relief as to Krueger, as well as damages. As amended, the verified complaint asserted that Krueger had violated the Contract by soliciting CIP patients, practicing podiatry within the geographic limits, soliciting a CIP employee for employment at Meridian, and engaging in a private podiatry practice in competition with CIP during his employment at CIP. CIP sought a preliminary injunction ordering Krueger to not practice podiatry in the area specified in the Contract, not solicit CIP patients for treatment, and not solicit CIP employees for employment for a two-year period. The complaint also alleged Meridian's tortious interference with the Contract. The trial court initially issued a temporary restraining order and set a hearing on the preliminary injunction for October 21,

2005. On that date, the parties agreed to dissolve the temporary restraining order and to continue the hearing. The trial court then set the preliminary injunction hearing for January 12, 2006.

On November 10, 2005, Krueger filed his answer to CIP's complaint. He admitted "rhetorical paragraph[ ] ... 17," (App.456), the complaint's allegation that "[i]n the course of the investigation of the sexual harassment complaint, Krueger admitted he kissed H.H. without her consent." (App.424). Krueger asserted as a counterclaim that pursuant to the Contract, he "was to have been provided a $350 per month car allowance which ha[d] never been paid," despite his "inquiry" and "request"; accordingly, he claimed that this constituted "a prior material breach" of the Contract that rendered its "non-compete provisions ... void." (App.460).

At the hearing on January 12, 2006, Dr. Anthony Miller—the podiatrist who owns CIP—testified that CIP operated podiatry offices in Marion, Hamilton, Johnson, Tippecanoe, Howard, Montgomery, Grant, and Henry counties. Miller testified that the non-compete provisions of its contracts with employee podiatrists were necessary to "protect" CIP's "investment." (Tr. 27). Miller explained that CIP spent funds marketing the various offices and providing support services for them, and he testified that part of the "good will" of CIP's business was the continuing presence of the podiatrists working at its offices. (Tr. 30). Miller testified that after Krueger's employment was terminated, another podiatrist was immediately assigned to see Krueger's patients at the Nora office; nevertheless, in late 2005, there had been a "significant decrease in the number of patients" at CIP's Nora office after Krueger "started practicing ten minutes away from [that] location." (Tr. 93, 92). Miller also testified that it would be "very difficult, if

not impossible to determine the amount of damages monetarily that [CIP] has suffered because" Krueger was practicing at nearby Meridian. (Tr. 115).

On March 17, 2006, the trial court issued its order denying CIP's request for a preliminary in junction. In its findings of fact, the trial court found that

- · 845 Indiana Administrative Code 1–6–1(c) requires "a podiatrist leaving a practice ... to provide written notice to his former patients that he has changed his practice";

- · CIP sought to enforce the non-compete restrictive covenant *not* with the goal of "protect[ing] the good will of the corporation" but "to protect its patient population and insure that there was no loss of income"; and

- · the non-compete clause covered counties in which CIP had no offices and "more than forty percent ... of the state's area and greater than forty-eight [percent] ... of its population."

(App.10).

The trial court stated that in order to gain a preliminary injunction, CIP was required to show that it will:

1. Be irreparably harmed by the failure of the Court to grant the preliminary injunction.

2. There is no adequate remedy at law.

3. The harm to the Plaintiff outweighs the harm to the Defendant.

4. The public interest would be disserved in not granting the preliminary injunction.

5. There is a significant probability of success at trial on the merits.

*U.S. Land S[ervices], Inc. v. U.S. Surveyor, Inc.,* 826 N.E.2d 49 (Ind.Ct.App. 2005).[2]

(App.11).

The trial court then concluded as a matter of law "that because there is no evidence that the protection sought by CIP relates to its good will, the restrictive covenants are invalid, unenforceable and geographically unreasonable." (App.11). It further concluded that because Meridian and Krueger "testified that they could track the former patients of Krueger that came to Meridian ... for treatment by Krueger," CIP had "an adequate remedy at law." *Id.* In addition, the trial court concluded that CIP had "not demonstrated that the harm to it would outweigh the harm to Krueger." (App.12). Further, because the Administrative Code charged Krueger with "an obligation to provide written notice to his former patients that he had changed practice groups," CIP had "implicitly authorized" him to "utilize its patient list to accomplish this task." *Id.* Finally, the trial court concluded as a matter of law that because of the special "relationship between a physician and a patient," and because "the right of a patient to choose the physician she believes will provide the best treatment is so fundamental, ... the public interest would be denied or disserved if it were to grant the motion for preliminary injunction sought by CIP." *Id.*

### DECISION

We recently summarized the applicable legal standards for reviewing a challenge such as the one before us as follows:

The decision whether to grant or deny a preliminary injunction rests within the discretion of the trial court, and the scope of appellate review is limited to

---

**2.** As will be discussed later, the trial court's

order misstates *U.S. Land Serv's.*

deciding whether the trial court has clearly abused its discretion. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances or if the trial court misinterprets the law. When determining whether or not to grant a preliminary injunction, the trial court is required to make special findings of fact and conclusions of law. When findings and conclusions of law are made, the reviewing court must determine if the trial court's findings support the judgment. We will reverse the trial court's judgment only when it is clearly erroneous. Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. We will consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment.

The trial court's discretion to grant or deny a preliminary injunction is measured by several factors: (1) whether the plaintiff's remedies at law are inadequate, thus causing irreparable harm pending the resolution of the substantive action if the injunction does not issue; (2) whether the plaintiff has demonstrated at least a reasonable likelihood of success at trial by establishing a prima facie case;[3] (3) whether the threatened injury to the plaintiff outweighs the threatened harm the grant of the injunction may inflict on the defendant; and (4) whether, by the grant of the preliminary injunction, the public interest would be disserved.[4]

The moving party has the burden of showing, by a preponderance of the evidence, that the facts and circumstances entitle him or her to injunctive relief. *Id.* The power to issue a preliminary injunction should be used sparingly, and such relief should not be granted except in rare instances where the law and facts are clearly in the moving party's favor.

*Aberdeen Apartments v. Cary Campbell Realty Alliance, Inc.,* 820 N.E.2d 158, 163 (Ind.Ct.App.2005), *trans. denied* (citations omitted).

## I.

■■■ Indiana law grants parties the freedom to contract. *See Fresh Cut, Inc. v. Fazli,* 650 N.E.2d 1126, 1129 (Ind.1995). However, noncompetition agreements are enforced only if reasonable. *Pathfinder Commc'ns Corp. v. Macy,* 795 N.E.2d 1103, 1109 (Ind.Ct.App.2003). Whether a noncompetition covenant is reasonable is a question of law. *Raymundo v. Hammond Clinic Ass'n,* 449 N.E.2d 276, 280 (Ind. 1983). Covenants must be reasonable with respect to the legitimate interests of the employer, restrictions on the employee, and the public interest. *Pathfinder,* 795 N.E.2d at 1109. To determine the reasonableness of the covenant, we first consider whether the employer has asserted a legitimate interest that may be protected by a covenant. *Id.* If the employer has asserted such an interest, we then determine whether the scope of the agreement is

3. We note that contrary to the trial court's citation of this element from *U.S. Land Serv's,* the statement therein was that "the movant has *at least a reasonable likelihood of success at trial* by establishing a prima facie case." *U.S. Land Serv's, Inc. v. U.S. Surveyor, Inc.,* 826 N.E.2d 49, 62 (Ind.Ct.App.2005) (emphasis added).

4. Again, unlike the trial court's citation thereof, this element was stated in *U.S. Land Services, Inc.,* as follows: "the public interest *would not be disserved.*" *U.S. Land Serv's,* 826 N.E.2d at 62 (emphasis added).

reasonable in terms of time, geography, and types of activity prohibited. *Id.*

■ CIP argues that the trial court's finding that there was no evidence that CIP sought "to protect the good will of the corporation but only the patient population and income" is not supported by the record and, therefore, clearly erroneous. Accordingly, CIP continues, the trial court's conclusion that the restrictive covenants are "invalid, unenforceable and geographically unreasonable" cannot stand. We agree.

The U.S. Supreme Court has described "good will" as generally indicating "that element of value which inheres in the fixed and favorable consideration of customers, arising from an established and well-known and well-conducted business." *Des Moines Gas Co. v. City of Des Moines*, 238 U.S. 153, 35 S.Ct. 811, 814, 59 L.Ed. 1244 (1915). Indiana courts have generally found covenants not to compete valid when they protect an employer's interest in the good will generated between a customer and a business, and/or the employer's interest in confidential information. *Pathfinder*, 795 N.E.2d at 1110.

Miller testified that CIP expended money to market the CIP offices and to provide support services for each office, and that its business growth involved all offices contributing to the success of the whole. Miller further testified that the non-compete provisions in the employee podiatrist contracts were to protect its financial investments in the marketing and support service for the offices company-wide. Miller also testified that patients would seek repeat treatment at a CIP office. Thus, Miller's testimony provided evidence that CIP's good will was jeopardized when its former employee, Krueger, commenced the practice of podiatry nearby.

Further, in *Unger v. FFW Corporation*, 771 N.E.2d 1240, 1244 (Ind.Ct.App.2002),

we held that an employer has a protectible interest in the good will of the business, and that its good will "includes ... information such as the names and addresses of customers." Krueger admitted having taken the names and addresses of patients he had treated at the Nora CIP office and having contacted those patients on behalf of his new, nearby podiatry practice.

Moreover, the Contract between Krueger and CIP expressly stated that Krueger was "entrusted with valuable, confidential and proprietary business information" of CIP, and that should he be terminated, his "use of such skills, knowledge and relationships would have an adverse effect on the practice of" CIP. (App.257–58). Accordingly, we find that the evidence clearly established that CIP had a legitimate protectible interest that could be protected by a covenant.

II.

■ We next consider whether the scope of the terms protecting this legitimate interest is reasonable in terms of time, geography, and types of activity prohibited. *Pathfinder*, 795 N.E.2d at 1109. At the outset, we note that the Contract contains an express provision stating that if the restrictive covenant "is determined to be too broad to be enforceable at law or in equity, then the area or the length of time or both shall be reduced to such area and time as shall be enforceable." (App. 258–59). Because this appeal concerns the denial of a preliminary injunction, and the purpose of a preliminary injunction is to maintain the status quo pending adjudication of the underlying claim, *see Gary Cmty. Sch. v. Service Employees, Int'l*, 839 N.E.2d 1191, 1194 (Ind.Ct.App.2005), we find the parties' agreement to the possible revision of the covenant's terms supports finding the covenant reasonable as a mat-

ter of law. The ultimate scope of the covenant is a question of fact, to be determined at trial. Nevertheless, we proceed with the general review.

■ The time limitation of the covenant is a two-year period. As CIP correctly notes, Indiana courts have upheld non-competition agreements that restrict competitive activity for two-year periods. *See Raymundo*, 449 N.E.2d at 278; *Norlund v. Faust*, 675 N.E.2d 1142, 1155 (Ind.Ct. App.1997); *Medical Specialists, Inc. v. Sleweon*, 652 N.E.2d 517, 523–24 (Ind.Ct. App.1995); *Washel v. Bryant*, 770 N.E.2d 902, 907–08 (Ind.Ct.App.2002). Therefore, the two-year restriction of the covenant agreed to by Krueger is reasonable as a matter of law.

■ The geographic restriction, as described by the trial court, covers a significant portion of Indiana. However, part of the reason for this area is the number of CIP locations—in eight counties; the agreement then forbids practice in not only those counties but also the adjacent counties. Miller testified that CIP offices often treated patients residing in adjacent counties. In *Raymundo*, a restriction that covered "the general service area of the Clinic," or the Clinic's "geographical service area" was found to be reasonable. 449 N.E.2d at 282. Thus, the covenant agreed to in the Contract and barring practice in counties in which CIP had offices as well as the adjacent counties, *i.e.*, CIP's patient service area, is reasonable as a matter of law.

The covenant forbids Krueger to engage in the practice of podiatry or podiatric surgery. The trial court made no finding that the restrictive covenant was unreasonable with respect to the types of activity prohibited. Accordingly, as a matter of law, we conclude that the restrictive covenant is reasonable in terms of time, geog-

raphy, and types of activity prohibited. *See Pathfinder*, 795 N.E.2d at 1109.

## III.

■ Therefore, we proceed to examine whether CIP established by a preponderance of the evidence that the facts and circumstances entitle it to injunctive relief. The first consideration is whether CIP demonstrated that its remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action if the injunction does not issue. *Aberdeen Apartments*, 820 N.E.2d at 163.

Krueger argues that "the very fact that CIP brought an action for monetary damages" and also sought injunctive relief "shows that it has an adequate remedy at law." Krueger's Br. at 6. However, Krueger provides no authority for the proposition that because CIP sought both injunctive relief and damages, injunctive relief must be denied. Even where the parties' contract provides a liquidated damages term, we have held that such damages are not the exclusive remedy because "money damages and injunctive relief serve different purposes." *Washel*, 770 N.E.2d at 906.

The trial court concluded that CIP had "an adequate remedy at law" because Meridian and Krueger testified that they "could track the former patients of Krueger that came to Meridian . . . for treatment by Krueger." (App.11). However, Miller testified that many CIP patients were not regularly scheduled; thus, those would not necessarily be included by the trial court's "track[ing]" mechanism. Moreover, Miller expressly testified that it would be "very difficult, if not impossible to determine the amount of damages that [CIP] ha[d] suffered" as a result of Krueger practicing nearby. (Tr. 115). Further, Miller testified that CIP made marketing and support service expenditures to build

the good will of the practice, and that the recoupment of the payments made to Meridian by the migrating patients would not fully offset the loss of good will. Finally, Miller discussed CIP's previous experience with a podiatrist that had left CIP and against whom CIP had failed to seek to injunctive relief, describing how CIP suffered a loss of patients for several years thereafter and how CIP "w[as] not" able to compute the damages in the ensuing legal action. (Tr. 56). The trial court's conclusion that CIP had an adequate remedy at law was clearly erroneous.

## IV.

■■■ We next consider whether CIP demonstrated at least a reasonable likelihood of success at trial by establishing a prima facie case. *Aberdeen Apartments*, 820 N.E.2d at 163. The trial court's order does not reflect an express conclusion in this regard, but it appears to find that the Indiana Administrative Code provision would result in CIP's failure at trial.[5] The trial court concluded that the provision "obligat[ed]" Krueger "to provide written notice to his former patients that he had changed practice groups." (App.12). The provision requires a podiatrist to

> give reasonable written notice to a patient or to those responsible for the patient's care when the podiatrist withdraws from a case so that another practitioner may be employed by the patient or by those responsible for the

patient's care. A podiatrist shall not abandon a patient.

845 I.A.C. 1–6–1(c). In the Contract, Krueger had expressly agreed that the patients he treated at CIP were CIP patients. Further, upon Krueger's departure, CIP immediately provided a podiatrist at the Nora office to treat the CIP patients there. Thus, for the purpose of demonstrating at least a reasonable likelihood of success at trial by establishing a prima facie case, a conclusion by the trial court that the Administrative Code provision precluded this result[6] would be erroneous as a matter of law.

■■■ CIP was also required to establish that the threatened injury to CIP outweighed the threatened harm that the grant of the injunction might inflict on Krueger. *Aberdeen Apartments*, 820 N.E.2d at 163. The trial court concluded that CIP had not "demonstrated that the harm to it would outweigh the harm to Krueger" because the evidence showed Krueger "would have to uproot his family and move to a new community outside the prohibited area," or "cease practicing podiatry in order to remain in central Indiana." (App.12). However, this area was that expressly described in the Contract, and Krueger chose to agree to this term. Further, as already discussed, *Raymundo* found a covenant barring the former employee's activities in the general practice area of the employer to be valid. *Raymundo*, 449 N.E.2d at 282. The covenant in the Contract covers the general

---

5. If this holding by the trial court did not address the reasonable likelihood of success on the merits at trial, the trial court's order omitted such a conclusion. However, once the party moving for the preliminary injunction demonstrates that there is a protectible interest and that the scope of the non-competition restriction "is reasonable in terms of time, geography, and types of activity prohibited," that party "has established a reasonable

likelihood of success at trial." *Unger*, 771 N.E.2d at 1245.

6. We note that the arguable application of this provision to any result at trial is further undermined by Krueger's admission that he limited his request for and use of the CIP patient list to those treated at the Nora office, which was located within 10 minutes of his new practice with Meridian.

practice area of CIP. In addition, Miller testified extensively as to how the continued practice of a former CIP podiatrist in a nearby location had in the past harmed CIP's business for many years after his departure. Therefore, we find that for the purpose of deciding whether to enjoin Krueger, the trial court's conclusion that CIP had failed to demonstrate that the harm to CIP would outweigh the harm to Krueger was clearly erroneous.

## V.

■ Lastly, we must consider whether the public interest would be disserved by the grant of the preliminary injunction. *Aberdeen Apartments*, 820 N.E.2d at 163. The trial court concluded that the public interest would be disserved if the injunction were granted here because the patient's right "to choose her physician" outweighed "the business interest of CIP." (App.12). In *Raymundo*, Indiana's Supreme Court addressed a similar public policy argument. It found paramount "the public interest in the freedom of individuals to contract," and held that there were "no reasons of public policy" to hold "invalid per se" the non-competition covenant entered into by a physician with his employing practice. 449 N.E.2d at 279, 281. Krueger reminds us that *Raymundo* "was decided twenty-three years ago," and asserts that we should "follow the trend and look to the health interests of the patient rather than that of business interest of the medical group." Krueger's Br. at 10. He provides no authority of such a "trend," and pursuant to *Raymundo*, Indiana law allows medical professionals to choose to enter into non-competition agreement. Accordingly, the trial court's conclusion on this fourth prong of the preliminary injunction standard is clearly erroneous.

## VI.

■ We also note Krueger's argument that we should affirm the trial court's denial of preliminary injunctive relief because CIP committed a "prior material breach of the [C]ontract." Krueger's Br. at 10. Specifically, Krueger reminds us that his counterclaim asserted CIP's breach of the Contract by not paying him the auto allowance as specified in the Contract. Krueger acknowledges that the trial court "did not address this issue," but he claims that the appellate court "can review whether there is a prior breach by CIP." *Id.* Krueger fails to offer any authority for this proposition, and he fails to cite any authority holding that such precludes the issuance of a preliminary injunction. Accordingly, we do not find Krueger's argument dispositive in our determination of whether the trial court erred in failing to grant a preliminary injunction to CIP.

CIP showed by a preponderance of the evidence that it is entitled to injunctive relief. Therefore, the trial court abused its discretion when it denied injunctive relief to CIP.

Reversed.

KIRSCH, C.J., and NAJAM, J., concur.