The HARBOURS CONDOMINIUM
ASSOCIATION, INC., Appellant–
Plaintiff,

v.

Angela HUDSON, Appellee–Defendant.

No. 10A01–0509–CV–435.

Court of Appeals of Indiana.

Aug. 22, 2006.

John A. Kraft, Young, Lind, Endres & Kraft, New Albany, IN, for Appellant.

R. Scott Lewis, Larry O. Wilder, Jeffersonville, IN, for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

The Harbours Condominium Association, Inc., ("Association") appeals from the trial court's denial of the Association's request for a money judgment and to foreclose on a condominium lien against a condominium owner, Angela Hudson. On appeal, the Association presents five issues for review, which we restate as:

1. Whether the trial court erred when it entered a personal judgment against Hudson in the amount of $7117.29.

2. Whether the trial court erred when it denied the Association's request to foreclose on the condominium lien.

3. Whether the trial court erred when it determined that the late fee charged by the Association constitutes an unenforceable penalty.

4. Whether the trial court erred by titling the underlying judgment "Order Denying Judgment Foreclosing Condominium Lien."

5. Whether the Association is entitled to appellate attorney's fees.

We affirm.

### FACTS AND PROCEDURAL HISTORY

In January 2002, Hudson purchased a condominium unit known as Unit Number 716 ("Unit 716") from The Harbours at Riverpointe ("the Harbours") in Jeffersonville. At the time of trial, Hudson believed the unit to be worth $350,000. All owners of units at the Harbours are subject to the terms of the Declaration of the Harbours Horizontal Property Regime ("the Declaration") and the Third Amendment to the Declaration ("the Third Amendment"). The Declaration provides that members are required to pay assessments and dues to the Association. The Third Amendment provided in relevant part:

Each Assessment shall be due and payable within five (5) days of the due date thereof as specified in this Declaration or in the By–Laws, or if not so specified, then within five (5) days of any due date(s) determined by the Board of Directors, and the date marking the end of the applicable time period allowed herein for the payment of such assessment is hereby termed the "Delinquency Date". Any Assessment which is not paid in full by the Delinquency Date shall be deemed delinquent without further notice or demand to the defaulting Owner, and Owner shall be charged a late fee of not less than twenty-five dollars ($25) plus an additional five dollars ($5) per day from the Delinquency Date until paid in full.... In the event that any costs or expenses, including attorneys' fees, are incurred by or on behalf of the Association with respect to the recovery or collection of any delinquent assessment, all such costs and fees shall be due and payable immediately by such delinquent Owner and shall bear interest from the dates incurred until paid in full, at a rate of interest equal to the lesser of: (i) the maximum non-usurious rate of interest under Indiana law; or (ii) eighteen percent (18%) per annum. All interest and all costs and expenses payable hereunder with respect to a delinquent Assessment shall be added to and deemed a part of such delinquent Assessment and shall constitute a lien on the delinquent Owner's Unit and Percentage Interest as of the date on which such delinquent Assessment first became a lien. In the event that any Assessment is not fully paid on or before

the Delinquency Date, the Association shall be entitled to accelerate and declare due and payable in full all installments of Assessments due for the year in which such delinquency occurs, and to enforce payment of the same by foreclosure of said lien and/or other appropriate legal proceedings in accordance with the laws of the State of Indiana.

Appellant's App. at 132.

In September 2002, Hudson filed a suit against the Harbours concerning the purchase of another unit. That suit was resolved by a settlement agreement, under which Hudson agreed to dismiss the suit in consideration for the return of $10,000 in earnest money she had paid. That money was to be held in escrow by the Harbours' attorney until the earlier of the sale of Unit 716 or October 1, 2003, one year from the date of settlement.

On October 10, 2002, Hudson paid to the Association $646.80, representing assessment and fees for two months.[1] Hudson believed that the payment brought her current with the Association, but the Association claims that the payment made Hudson current only through July 2002. Hudson paid no assessments or fees after that, believing that those charges would be deducted from the $10,000 in escrow.

In October 2003, the Association's attorney notified Hudson's counsel that the $10,000 plus interest in escrow would be disbursed to the Association and deducted from Hudson's accumulated delinquent assessments. That letter also provided that there were "additional amounts due ... over and above the amount being dis-

bursed from escrow[.]" Appellee's App. at 1. A schedule attached to the letter showed that the delinquent assessments and late fees totaled $16,753.44 through October 1, 2003, before deduction of the escrow amount. The escrowed amount plus interest was then disbursed to the Association, reducing the amount owed for delinquent assessments and late fees.

In December 2003, the Association filed with the Clark County Record a notice of condominium lien against Unit 716 with the Clark County Recorder. In January 2004, the Association filed suit against Hudson, seeking a money judgment in the amount of $7325.86 plus continuing monthly fees, costs and attorney's fees and also seeking foreclosure of its lien against Unit 716. At trial, the Association asserted that Hudson had actually owed $26,000 in October 2003. It further asserted that, at the time of trial, Hudson owed $74,154.24 in monthly assessments and late fees from December 2003 through February 15, 2005.[2]

On March 24, 2005, the trial court entered its Order Denying Judgment Foreclosing Condominium Lien. The trial court found that the Association had sustained actual damages in the amount of $7117.29 and that Hudson owed the Association condominium fees in the amount of $799.12. The trial court entered a personal money judgment against Hudson and in favor of the Association in the amount of $7117.29 plus court costs. Hudson paid to the trial court clerk the sums of $7117.29 and $799.12. The Association then filed a mo-

---

1. When Hudson purchased Unit 716, the assessments and monthly dues were assessed at $323.40 per month. The October 2002 payment was based on that rate. In July 2003, the monthly assessment increased to $359.32 per month, and on January 1, 2005, it increased to $417.83 per month.

2. The trial court found that the total of $74,154.24 was computed by multiplying fourteen months times $4,773.46 as the monthly accumulated condominium fee, assessment, and late fees, and by then adding $7,325.80, the lien amount alleged in the complaint. We note that the trial court used a figure for the lien amount that is six cents less than that alleged in the complaint.

tion to correct error, which the trial court granted in part by removing a reference to malicious conduct by the Association. In all other respects, the trial court denied the motion. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

The Association appeals from a judgment in which the trial court made special findings pursuant to Indiana Trial Rule 52(A). That rule provides in pertinent part that "on appeal of claims tried by the court without a jury ... the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). When a trial court has entered specific findings and conclusions along with its judgment under Trial Rule 52, we apply a two-tiered standard of review. *MCS LaserTec, Inc. v. Kaminski*, 829 N.E.2d 29, 34 (Ind.Ct.App.2005). First, we consider whether the evidence supports the findings, construing the findings liberally in support of the judgment. *Id.* Findings are clearly erroneous only when a review of the record leaves us firmly convinced that a mistake has been made. *Id.* Next, we determine whether the findings support the judgment. *Id.* A judgment is clearly erroneous when the findings of fact and conclusions thereon do not support it, and we will disturb the judgment only when there is no evidence supporting the findings or the findings fail to support the judgment. *Id.* We do not reweigh the evidence, but only consider the evidence favorable to the trial court's judgment. *Id.*

We note that the Association is appealing from a negative judgment. A party who had the burden of proof at trial appeals from a negative judgment and will prevail only if he establishes that the judg-

ment is contrary to law. *Helmuth v. Distance Learning Sys., Inc.*, 837 N.E.2d 1085, 1089 (Ind.Ct.App.2005). A judgment is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to only one conclusion but the trial court reached a different conclusion. *Id.*

### Issue One: Amount of Judgment

■ The Association claims that the trial court erred when it awarded judgment only in the amount of $7117.29. A co-owners association may request a personal money judgment against the condominium owner, Ind.Code § 32–25–6–3(d), and the association may also foreclose on a condominium lien to recover delinquent assessments, Ind.Code § 32–25–6–3(b). The statute contemplates both a legal and an equitable remedy for a co-owners association to recover delinquent amounts due from a unit owner.

■ Here, the Association sought a personal money judgment against Hudson in the amount of its lien, including both delinquent assessments and late fees. In its judgment, the trial court determined that late fees totaled $7117.29 and that the delinquent assessments totaled $799.12. However, in its judgment the trial court only ordered Hudson to pay $7117.29 for late fees. We conclude that the trial court erred when it failed to include in the judgment the amount Hudson owed for delinquent assessments. However, we further conclude that the error is harmless.

Under the harmless error rule:

[N]o error or defect in any ruling or order in anything done or omitted by the court ... is ground for granting relief under a motion to correct errors or ... for reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or

defect in the proceeding which does not affect the substantial rights of the parties.

Ind. Trial Rule 61. Here, after the judgment was entered, Hudson paid to the trial court clerk $7117.29 for late fees, as ordered in the judgment, as well as $799.12, the amount owed for delinquent assessments. Hudson paid the Association the delinquent assessments even though the assessments were not included in the judgment. Thus, the trial court's error in not including the delinquent assessment amount in the judgment is harmless.

### Issue Two: Foreclosure of Condominium Lien

■ The Association also claims that the trial court erred when it denied the Association's request to foreclose on the condominium lien against Unit 716. Hudson counters that the statute does not mandate foreclosure. We agree with the Association that the trial court should have decreed foreclosure of the Association's lien, but we conclude, again, that any error was harmless.

The Indiana Horizontal Property Law ("the HPL"), Indiana Code Sections 32–25–1–1 to 32–25–9–2, "sets forth a simple and direct statutory guide for the development and maintenance of a horizontal property regime" such as a condominium. *See Hatfield v. La Charmant Home Owners Ass'n*, 469 N.E.2d 1218, 1220 (Ind.Ct. App.1984). "Condominium" means real estate lawfully subjected to the HPL by the recordation of condominium instruments and "with respect to which the undivided interests in the common areas and facilities are vested in the condominium unit owners." Ind.Code § 32–25–2–7. A "condominium unit" is a separate and distinct parcel of realty within the development that is connected to the common areas but in which its owner has an undivided interest. Ind.Code § 32–25–2–9; *see also Hatfield*, 469 N.E.2d at 1220. Thus,

"condominium" means the entire development, and "condominium unit" means a privately owned unit within the development. An association of co-owners acts as an entity managing the condominium in accordance with the articles, bylaws, and declaration of the condominium. Ind.Code § 32–25–2–2.

A condominium association typically charges fees or assessments to condominium unit owners in order to maintain the condominium's common areas and other necessary operations. The HPL provides in part that all sums assessed by a condominium association "but unpaid for the share of common expenses chargeable to any condominium unit constitute a lien on the unit effective at the time of assessment." Ind.Code § 32–25–6–3(a). The HPL further provides that "[a] lien under [Indiana Code Section 35–25–6–3(a) ] may be filed and foreclosed by suit by the manager or board of directors, acting on behalf of the association of co-owners under the laws of Indiana governing mechanics' and materialmen's liens." Ind.Code § 32–26–6–3(b).

Here, the Association's complaint requested both a money judgment against Hudson and foreclosure of the condominium lien. Both remedies are authorized under the Association's governing documents and the HPL. Specifically, the Third Amendment to the Declaration provides that unit owners are liable to the Association for assessments, that delinquent assessments may be accelerated, that delinquent assessments constitute a lien on the delinquent owner's unit, and that the Association "shall be entitled to enforce payment of the same by foreclosure" of such a lien. Appellant's App. at 132. And, as noted above, the HPL specifically allows foreclosure under Indiana Code Section 32–25–6–3(b) and/or a money judgment under Indiana Code Section 32–25–6–3(d).

■ Hudson argues that foreclosure is not mandated under Indiana Code Section 32–25–6–3. We agree with Hudson that the HPL uses permissive language when it provides for foreclosure. *See* Indiana Code Section 32–25–6–3. But, as noted above, the Third Amendment provides that the Association "*shall* be entitled … to enforce payment of the [lien] by foreclosure of said lien[.]" Appellant's App. at 132 (emphasis added). The Declaration, as amended, is a contract governing the relationship between the Association and unit owners, and that contract entitles the Association to foreclose on condominium liens. The court may not rewrite the contract for the parties. See *Dick Corp. v. Geiger*, 783 N.E.2d 368 (Ind.Ct.App.2003), *trans. denied; Zollman v. Geneva Leasing Assocs.*, 780 N.E.2d 387 (Ind.Ct.App.2002). Thus, we conclude that the trial court erred when it did not enforce the Third Amendment and denied the Association's request to foreclose on the lien against Unit 716.

■ Although we conclude that the trial court erred when it denied the Association's request to foreclose on its lien against Unit 716, we also conclude that such error is harmless. As noted above, no error is ground for reversal on appeal unless "refusal to take action appears to the court inconsistent with substantial justice" or would "affect the substantial rights of the parties." Ind. Trial Rule 61. Here, the trial court entered a personal money judgment in favor of the Association in the amount of $7117.29 for late fees. After that judgment was entered, Hudson paid to the trial court clerk two amounts, $7117.29 and $799.12. The latter amount equals the amount of delinquent assessments. Had the trial court ordered foreclosure of the lien against Unit 716, the trial court would also have ordered sale of the unit. *See* Ind.Code § 32–28–3–5(d) ("If the lien is foreclosed[,] the court rendering judgment shall order a sale to be made of the property subject to the lien."). But if a decree of foreclosure had been entered, Hudson would have discharged the lien when she paid the money judgment. *See* Ind.Code § § 32–26–6–3(b); 32–28–3–1(c). Because Hudson has already paid both the late fees and the delinquent assessments, the Association is in the same position as it would have been had the trial court entered a decree of foreclosure of the lien. Thus, any error is harmless.[3]

**Issue Three: Liquidated Damages**

■ The Association also contends that the trial court erred when it determined that the late fees charged by the Association under the Third Amendment constitute an unenforceable penalty. Instead, the Association argues that the late fee charges are permissible as liquidated damages. We cannot agree.

We addressed liquidated damages in *Gershin v. Demming*, 685 N.E.2d 1125 (Ind.Ct.App.1997):

A typical liquidated damages provision provides for the forfeiture of a stated sum of money upon breach without proof of damages. Liquidated damages provisions are generally enforceable where the nature of the agreement is such that when a breach occurs the resulting damages would be uncertain and difficult to ascertain. However, the stipulated sum will not be allowed as liqui-

---

**3.** We note that under Indiana Code Section 32–25–6–3(b), in the event of foreclosure Hudson would have owed rent to the Association between the date of foreclosure and the date of the sale of Unit 716, if rent is provided for in the bylaws. Because the Association did not argue on appeal that it would have been entitled to rent had the trial court ordered foreclosure, we need not address that issue.

dated damages unless it may fairly be allowed as compensation for the breach.

We are tolerant of provisions within contracts which provide for liquidated damages. Where the sum stipulated in the agreement is not greatly disproportionate to the loss likely to occur, the provision will be accepted as a liquidated damages clause and not as a penalty, but where the sum sought to be fixed as liquidated damages is grossly disproportionate to the loss which may result from the breach, the courts will treat the sum as a penalty rather than as liquidated damages. In determining whether a stipulated sum payable on a breach of contract constitutes liquidated damages or a penalty, the facts, the intention of the parties and the reasonableness of the stipulation under the circumstances of the case are all to be considered. The distinction between a penalty provision and one for liquidated damages is that a penalty is imposed to secure performance of the contract and liquidated damages are to be paid in lieu of performance. Notwithstanding a plethora of abstract tests and criteria for the determination of whether a provision is one for a penalty or liquidated damages, there are no hard and fast guidelines to follow. The question whether a liquidated damages clause is valid, or whether it constitutes a penalty, is a pure question of law for the court.

*Gershin,* 685 N.E.2d at 1127–28.

Here, the Association alleges that the late fees accrued under the terms of the Declaration constitute liquidated damages, not a penalty. As noted above, under the Declaration, an Owner is charged $25 for each delinquent assessment plus $5 per day from the delinquency date until the assessment is paid in full. The Association claims that it used that formula to calculate Hudson's late fees to be $74,154.24 as of the date of trial:

| | |
|---|---|
| 14 months of delinquency × $4733.46 late fees per month | $66,828.44 |
| Condominium Lien Amount | $ 7,235.80 |
| | $74,154.24 |

In calculating the late fees, the Association used eighteen percent compounded interest.[4]

We agree with Hudson that the late fees calculated by the Association constitute an unenforceable penalty, not liquidated damages, because they are grossly disproportionate to the actual damages suffered by the Association as a result of Hudson's delinquencies. Evidence adduced at trial shows that the Association sent five collection letters to Hudson. Each letter took one minute to prepare and was prepared by clerical personnel who earned $9.50 per hour. Also, the Association's community director spent five hours per month at $25 per hour attempting to collect Hudson's assessments from October 2002 to the date of trial, February 2005. The trial court found that the administrative cost of collection totaled $3500.79. In addition, the Association paid attorney's fees up to and including the trial in the amount of $3616.50. And the community director testified that the Association had not been unable to pay its bills or maintain its staff and services as a result of Hudson's failure to pay her condominium assessments. Thus, the trial court found that the Association's actual damages as a result of Hudson's failure to pay the monthly assessments totaled $7117.29. We cannot say that the evidence leads to a contrary conclusion.

---

4. The Association also presented evidence that the late fees plus interest without compounding totaled $60,197.58. In its brief, the Association acknowledged that "[p]erhaps the error of [the Association] was to have compounded the interest at eighteen (18%) percent." Appellant's Brief at 13.

■ We acknowledge some contradiction within the rules that define how to distinguish liquidated damages from a penalty. Specifically, in order to show that the sum stipulated in an agreement as liquidated damages is not "grossly disproportionate" to the loss, the party seeking to enforce the liquidated damages provision must demonstrate some proportionality between the loss and the sum established as liquidated damages. *Id.* at 1128. Yet a "typical liquidated damages provision provides for the forfeiture of a stated sum of money without proof of damages." *Gaddis v. Stardust Hills Owners Ass'n, Inc.*, 804 N.E.2d 231, 236 (Ind.Ct.App. 2004). We resolve this apparent conundrum by looking to the purpose of liquidated damages, which, as noted above, is to compensate for damages that would be uncertain and difficult to ascertain. *See Gershin*, 685 N.E.2d at 1127; *Harris v. Primus*, 450 N.E.2d 80, 84 (Ind.Ct.App. 1983). Thus, a party who seeks to enforce a liquidated damages clause need not prove actual damages but may be required to show a correlation between the liquidated damages and actual damages in order to assure that a sum charged may fairly be attributed to the breach. *See Gershin*, 685 N.E.2d at 1127.

■ Here, the evidence shows that the damages sustained by the Association due to Hudson's failure to pay Association assessments were not uncertain or difficult to ascertain. And the evidence shows that the late fees that the Association claims in this case are "grossly disproportionate" to the actual loss. *Id.* at 1128. As noted above, the distinction between a penalty provision and one for liquidated damages is that a penalty is imposed to secure performance of the contract and liquidated damages are to be paid in lieu of performance. *Id.* In the present case, the late fees were imposed to secure payment of the delinquent assessments but did not relieve Hudson of her obligation to pay the underlying delinquent assessments. Thus, the late fees calculated by the Association are more akin to a penalty than liquidated damages.

The trial court determined that Hudson owed a balance of $799.12 for unpaid condominium assessments at the time of trial, a finding that the Association does not dispute. The Association claimed that Hudson owed late fees at the rate of $25 per delinquency and $5 per day, for total damages in the amount of $74,154.24, but the trial court computed the cost of the Association's collection attempts to be $7117.29. On these facts, where the "liquidated damages" are some ten times the actual loss, we conclude that the liquidated damages provided for under the Third Amendment constitute an unenforceable penalty. Thus, the Association has not shown that the trial court erred as a matter of law.

### Issue Four: Title of Judgment

■ The Association alleges that the trial court "erred in titling the judgment as in favor of Hudson." Appellant's App. at 28. We cannot agree. We will read the judgment's provisions together in order to render the judgment effective. *Carter v. Dayhuff*, 829 N.E.2d 560, 569 (Ind.Ct.App.2005). In so doing, we may look at the entire record, including, but not limited to, the complaint, findings, and evidence to ascertain the judgment's meaning and effect. *Id.* Here, the trial court titled its judgment "Order Denying Judgment Foreclosing Condominium Lien." Indeed, while the trial court entered a money judgment in favor of the Association and against Hudson, the trial court also denied the Association's request to foreclose on its condominium lien against Hudson's unit. Because we review the entire judgment to discern its meaning, the title's failure to indicate that a judgment was entered is of no import, even though we hold that the

trial court erred when it denied foreclosure. *See id.* While the title does not indicate that a judgment was entered against Hudson, there is no harm done in the title. We conclude that the trial court did not commit reversible error in its choice of title for the judgment entered in this case.

### Issue Five: Appellate Attorney's Fees

The Association asserts that it is entitled to appellate attorney's fees under the terms of the Third Amendment. The relevant portion of the Third Amendment provides:

> In the event that any costs or expenses, including attorneys' fees, are incurred by or on behalf of the Association with respect to the recovery or collection of any delinquent Assessment, all such costs and fees shall be due and payable immediately by such delinquent Owner and shall bear interest from the dates incurred until paid in full, at a rate of interest equal to the lesser of: (i) the maximum legal non-usurious rate of interest under Indiana law; or (ii) eighteen percent (18%) pre annum.

Appellant's App. at 132. But, a party is entitled to appellate attorney's fees only for the amount of fees that can be attributed to that portion of the appeal in which that party prevailed. *Gershin,* 685 N.E.2d at 1131. Here, although we have concluded that the trial court erred when it denied foreclosure and when it failed to include the amount of delinquent assessments in the money judgment, we have also found that those errors are harmless because Hudson has paid the judgment and delinquent assessments in full. As a result, the Association has not prevailed on appeal and is not entitled to appellate attorney's fees.

### Conclusion

We conclude that the trial court erred when it failed to include the delinquent assessment amount in the judgment and failed to grant the Association's request to foreclose on the condominium lien on Unit 716. But such errors are harmless because Hudson has paid the Association the delinquent assessments and the late fees calculated by the trial court. We further conclude that the "liquidated damages" provided for under the Third Amendment constitute an unenforceable penalty because, on these facts, the damages are grossly disproportionate to the losses actually sustained by the Association as a result of Hudson's delinquencies. We also conclude that the trial court did not err in its choice of title for the judgment because we read the judgment in its entirety together with the pleadings. And finally, we conclude that the Association is not entitled to appellate attorney's fees because it has not prevailed on appeal.

Affirmed.

SHARPNACK, J., and ROBB, J., concur.