**CORVEE, INC., Appellant,**

v.

**Mark FRENCH, Appellee.**

**No. 84A04–1010–CC–696.**

Court of Appeals of Indiana.

Feb. 18, 2011.

Darin Higgs, Michael J. Sacopulos, Sacopulos Johnson & Sacopulos, Terre Haute, IN, Attorneys for Appellant.

## OPINION

BARNES, Judge.

### Case Summary

Corvee, Inc. appeals the amount of attorney fees the trial court awarded it in

Corvee's successful collection action against Mark French. We affirm.

### Issue

The sole restated issue is whether the trial court properly calculated the amount of attorney fees to which Corvee was entitled.

### Facts

On October 1, 2009, French signed an admission document for Harsha Behavioral Center ("Harsha") in Terre Haute.[1] The document contained the following paragraph:

> As a courtesy to you, the hospital may bill your insurance company, but it is not obligated to do so. Regardless, you agree that except where prohibited by law, the financial responsibility for the services rendered belongs to you, the undersigned. You also agree that if the hospital must initiate collection efforts to recover amounts owed by you, then in addition to amounts incurred for the services rendered you will pay: (1) any and all costs incurred by the hospital in pursuing collection, including, but not limited to, reasonable attorneys' fees, and (b) any court costs or other costs of litigation incurred by the hospital that applicable rules or statutes permit the hospital to recover. I also acknowledge that I am responsible for reasonable interest, collection fees, attorney fees of the greater of a) forty percent (40%) or b) $300.00 of the outstanding balance, and/or court costs incurred in connection with any attempt to collect amounts I may owe.

App. p. 15.

Harsha billed French $8,500 for services rendered. French made no payments to-

---

1. Although the record is unclear, it appears that French's child was the patient actually admitted to Harsha.

wards the bill. Harsha eventually assigned the account to Corvee, a collection agency. On June 21, 2010, Corvee filed suit against French. French failed to respond to the complaint. On July 26, 2010, Corvee moved for default judgment and sought to recover $3,400 in attorney fees, or forty percent of $8,500. The trial court originally refused to grant default judgment, noting Corvee had not complied with a local rule requiring an affidavit in support of the claim for attorney fees and an affidavit indicating compliance with the Soldiers and Sailors Relief Act. The trial court also stated in this order that the amount of attorney fees Corvee was seeking was "patently unreasonable." *Id.* at 2.

On September 13, 2010, after Corvee filed an affidavit regarding attorney fees and the Soldiers and Sailors Relief Act, the trial court entered default judgment against French, awarding the full outstanding $8,500 account balance. The trial court awarded Corvee $1,000 in attorney fees, however, determining that five hours at $200 per hour was a reasonable fee for a default judgment collection action. Corvee's attorney fees affidavit had contained no information regarding the amount of time spent on the case, hourly billing rates, or any information as to how much Corvee actually was billed by its attorney; the affidavit simply stated that the contract French executed required the payment of $3,400 in attorney fees. Corvee filed a motion to correct error, which the trial court denied. Corvee now appeals the attorney fees award.

### Analysis

Corvee contends that the contract French executed with Harsha unambiguously requires him to pay attorney fees that amount to $3,400, or forty percent of the $8,500 balance owed to Harsha. There is no dispute here that the contract unambiguously required French to pay that amount, designated as attorney fees. The issue is whether that provision is enforceable. Indiana appellate courts have not yet had the occasion to address an attorney fees provision identical to this one.

■ At the outset, we acknowledge that French has not filed an appellee's brief. When an appellee does not file a brief, we may reverse if the appellant demonstrates prima facie error. Prima facie means "at first sight, on first appearance, or on the face of it." *Garner v. Kovalak,* 817 N.E.2d 311, 313 (Ind.Ct.App.2004). Although this rule relieves us of the burden of controverting an appellant's arguments for reversal, it does not relieve us of " 'our obligation to decide the law as applied to the facts in the record in order to determine whether reversal is required.' " *Id.* (quoting *Vukovich v. Coleman,* 789 N.E.2d 520, 525 n. 4 (Ind.Ct.App.2003)). If an appellant does not meet the prima facie error burden for reversal, we will affirm. *Strowmatt v. Rodriguez,* 897 N.E.2d 500, 502 (Ind.Ct.App.2008).

■ We presume that contracts represent the freely bargained agreement of the parties. *Grott v. Jim Barna Log Systems–Midwest, Inc.,* 794 N.E.2d 1098, 1102 (Ind.Ct.App.2003), *trans. denied.* We conclude, however, that the attorney fees provision in the contract between Harsha and French clearly is in the nature of a liquidated damages provision, which requires further analysis. The definition of a liquidated damages provision is that it provides for the forfeiture of a stated sum of money without proof of damages. *Harbours Condo. Ass'n, Inc. v. Hudson,* 852 N.E.2d 985, 993 (Ind.Ct.App.2006). Here, the contract imposed an obligation upon French to pay a sum certain in attorney fees upon breach, without any requirement by Harsha (or Corvee) to prove that it actually incurred fees in that amount, or even that

such a fee would be considered reasonable as an ethical and legal matter.

■■■ Courts will not enforce a liquidated damages provision that operates as a penalty. *See id.* Whether a liquidated damages provision is valid or is an unenforceable penalty is a question of law. *Olcott Int'l & Co., Inc. v. Micro Data Base Sys., Inc.*, 793 N.E.2d 1063, 1077 (Ind.Ct. App.2003), *trans. denied.* Liquidated damages provisions generally are valid if the nature of the contract is such that damages resulting from a breach would be uncertain and difficult to ascertain. *Id.* "However, to be enforceable the stipulated sum must fairly be allowed as compensation for the breach." *Id.* A party seeking to enforce a liquidated damages clause need not prove actual damages, but may be required to show a correlation between the liquidated damages and actual damages in order to assure that a sum charged may fairly be attributed to the breach. *Harbours*, 852 N.E.2d at 993.

■ We begin by noting that calculation of attorney fees incurred during litigation is not something that should be considered difficult to ascertain. Such calculations are made on a regular basis by courts, either upon their own knowledge of what constitutes a reasonable fee or upon documentary evidence submitted by a party seeking such fees. Thus, it strikes us as unnecessary to transform a standard attorney fees provision in a contract into, effectively, a liquidated damages provision that may or may not have any correlation to actually incurred attorney fees.

■ Furthermore, we observe that "even under a contract, an award of attorney's fees must be reasonable." *Bruno v. Wells Fargo Bank, N.A.*, 850 N.E.2d 940, 951 (Ind.Ct.App.2006). In *Smith v. Kendall*, 477 N.E.2d 953 (Ind.Ct.App.1985), we addressed a situation in which creditors sought to recover attorney fees from debtors under promissory notes containing provisions for the payment of reasonable attorney fees, but there was insufficient evidence presented as to the amount of attorney fees actually incurred in the litigation by the creditors. We affirmed the trial court's decision not to award any attorney fees to the creditors. We stated that provisions in promissory notes for the payment of attorney fees "should not extend beyond reimbursing the holder of the note for the necessary attorney's fees reasonably *and actually* incurred in vindicating the holder's collection rights by obtaining judgment on the note." *Smith*, 477 N.E.2d at 954 (emphasis added). Additionally, such provisions " 'cannot be made a cloak for speculation and profit by the holder.' " *Id.* (quoting *Shoup v. Snepp*, 22 Ind.App. 30, 35, 53 N.E. 189, 191 (1899)).

Ultimately, we held:

The suit was one for collection on a promissory note, not one in [the attorney's] name for collection of his fees. The award of attorney's fees in a case such as this is an element of damages arising from the default on payment of the note. There is no attempt to compensate an attorney for all the legal services he or she performed in connection with attempting to collect on the note. To the contrary, the amount of the award is intended to reflect the amount the party recovering on the note reasonably had to expend to reduce to judgment his or her right to that recovery. The attorney's fee award is part of the judgment paid to the plaintiff. It is not an award of fees to the attorney. The fee which an attorney expects from a client is the subject of a separate agreement between the attorney and client and is not directly dependent on whether the court awards fees or the amount of the fees awarded. *To award attorney's fees to the holder of a note when there is no evidence such fees have been incurred would result in a possible windfall contrary to the purpose of the*

*attorney's fees provision to indemnify the holder for the payment of legal expenses.*

*Id.* at 955–56 (emphasis added) (citation and footnote omitted).

Although *Smith* dealt specifically with promissory notes, we believe its observations are equally applicable in this case. There is no evidence in this case that Corvee actually incurred attorney fees of $3,400 in attempting to collect this debt from French. To allow Corvee to recover that amount in the absence of such evidence gives rise to the possibility that it will enjoy a windfall at French's expense, or that it will recover more from French than the outstanding account balance and the necessary costs Corvee actually incurred in collecting it. Collection actions should permit creditors to recover that to which they are rightfully entitled to make themselves whole, and no more.[2] The trial court correctly refused to enforce the forty percent attorney fees provision.[3] We also see no basis for second-guessing the trial court's calculation that $1,000 would reasonably and actually compensate Corvee for its attorney fees. *See Venture Enter., Inc. v. Ardsley Distrib., Inc.,* 669 N.E.2d 1029, 1033 (Ind.Ct.App.1996) (holding that trial courts have broad discretion in determining what constitutes a reasonable attorney fee, and that they may judicially notice what constitutes a reasonable fee).

### Conclusion

We affirm the trial court's determination of the amount of attorney fees to which Corvee is entitled to collect from French.

Affirmed.

BAKER, J., and VAIDIK, J., concur.

---

2. We acknowledge and understand that debt collection by attorneys has become a specialty of the legal profession. Although the work is important and necessary, we also understand that in many instances no money is ever collected on the judgments entered in these types of cases. However, we decline to sanction a scatter-shot approach to attorney fees that allows a fortuitous gain on some specific cases.

3. We need not decide whether, as between a creditor and its attorney, an attorney fee for collection equaling forty percent of the outstanding debt would constitute a reasonable fee. Our resolution of this case also makes it unnecessary to address whether such a provision such as the one here could be enforceable, if there was evidence that a creditor actually was charged attorney fees amounting to forty percent of a debt, but that amount would otherwise be unreasonable under settled guidelines for determining a reasonable attorney fee. *See Venture Enter., Inc. v. Ardsley Distrib., Inc.,* 669 N.E.2d 1029, 1034 (Ind. Ct.App.1996) (holding that a contingent fee agreement between an attorney and his client is not controlling in determining reasonable attorney fees to assess against an opposing party who is contractually required to pay attorney fees). Whether such a provision might be considered unconscionable, resulting from the use of a standardized contract between parties of unequal bargaining power, also is not before us today. *See Grott,* 794 N.E.2d at 1102.