## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 04 2017, 6:13 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeffrey J. Jinks
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Donald D. Levenhagen
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Carriage Courts Homeowners Association, Inc., *Appellant-Defendant,* <br><br> v. <br><br> Rocklane Company, LLC, *Appellee-Plaintiff* | December 4, 2017 <br><br> Court of Appeals Case No. 49A04-1705-PL-968 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable David J. Dreyer, Judge <br><br> Trial Court Cause No. 49D10-1508-PL-26526 |

**Altice, Judge.**

### Case Summary

[1]     Carriage Courts Homeowners Association, Inc. (the HOA) appeals from the entry of summary judgment in favor of Rocklane Company, LLC (Rocklane)

on Rocklane's complaint for breach of contract. On appeal, the HOA raises the following arguments:

> 1. Did the trial court err in rejecting the HOA's argument that a mutual mistake of fact prevented the formation of a contract?

> 2. Did the trial court err in concluding that the liquidated damages clause was enforceable?

Rocklane cross-appeals and raises the following issue:

> 3. Did the trial court abuse its discretion in awarding Rocklane only a portion of its requested attorney fees?

We affirm in part, reverse in part, and remand with instructions.

## Facts & Procedural History

The HOA is the governing body for Carriage Courts, a thirty-six-building condominium complex in Indianapolis. Rocklane is a contractor focusing on commercial and residential roofing projects, and a large part of its business involves working with insurance adjusters to settle customers' insurance claims.

In the summer of 2014, after a hail storm caused damage to some of the roofs in the Carriage Courts community, the HOA contacted Rocklane and prepared to file a claim with its insurer. On August 12, 2014, Rocklane representatives Randal Adkins and Jay Burkert attended an HOA board meeting to discuss the potential hail damage and the assistance Rocklane could provide. Also in attendance were the HOA board members and a representative of Kirkpatrick

Management Company, which provides professional property management services for the HOA. During the meeting, the HOA signed a written agreement (the Agreement) pursuant to which Rocklane was authorized to perform inspections with the HOA's insurer and to complete all storm damage repairs authorized in the final insurance settlement. The Agreement provided further that failure to complete the contract would result in a twenty percent cancellation fee and failure to provide payment as specified would result in additional collection and attorney fees. When HOA president Sara Hanson asked Adkins how many roofs he thought would be covered, Adkins said he hoped at least five. Hanson responded that she would be happy if Rocklane could get two roofs replaced.

Rocklane performed the inspections with the HOA's insurer as agreed, and the insurer ultimately agreed to replace the roofs on twenty buildings in the Carriage Courts community. This resulted in an insurance settlement in the amount of $628,393.78. Despite the Agreement with Rocklane, the HOA took bids from other contractors and ultimately hired another company to do the repairs.

On August 7, 2015, Rocklane filed a complaint for breach of contract seeking damages in the amount of $125,678.75, or twenty percent of the total insurance settlement. The parties filed cross-motions for summary judgment and, after a hearing, the trial court granted Rocklane's motion and entered judgment against the HOA in the full amount requested. The trial court subsequently conducted a hearing to determine attorney fees and prejudgment interest.

Rocklane's counsel submitted an affidavit attesting to fees in the amount of $14,880.50. The HOA did not submit opposing evidence or dispute the reasonableness of the fees. On April 17, 2017, the trial court entered an order awarding Rocklane prejudgment interest in the amount of $23,166.21 and attorney fees in the amount of $2500, as well as court costs. This appeal ensued.

## Discussion & Decision

We review summary judgment de novo and apply the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party must show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law; if the movant carries this burden, then the nonmoving party must present evidence establishing the existence of a genuine issue of material fact. *Asklar v. Gilb*, 9 N.E.3d 165, 167 (Ind. 2014). "We construe all factual inferences in the non-moving party's favor and resolve all doubts as to the existence of a material issue against the moving party." *Sargent v. State*, 27 N.E.3d 729, 732 (Ind. 2015). That the parties have filed cross-motions for summary judgment does not alter our standard of review; we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.* We will affirm summary judgment on any basis supported by the record. *Pfenning v. Lineman*, 947 N.E.2d 392, 408-09 (Ind. 2011).

## 1. Mutual Mistake of Fact

[8] We first address the HOA's argument that a mutual mistake of fact prevented the formation of a contract.

> The doctrine of mutual mistake provides that "[w]here both parties share a common assumption about a vital fact upon which they based their bargain, and that assumption is false, the transaction may be avoided if because of the mistake a quite different exchange of values occurs from the exchange of values contemplated by the parties." *Bowling* [*v. Poole*, 756 N.E.2d 983, 988-989 (Ind. Ct. App. 2001)] (quoting *Wilkin v. 1st Source Bank*, 548 N.E.2d 170, 172 (Ind. Ct. App. 1990)). "It is not enough that both parties are mistaken about any fact; rather, the mistaken fact complained of must be one that is 'of the essence of the agreement, the *sine qua non*, or, as is sometimes said, the efficient cause of the agreement, and must be such that it animates and controls the conduct of the parties.'" *Bowling*, 756 N.E.2d at 989 (quoting *Jackson v. Blanchard*, 601 N.E.2d 411, 416 (Ind. Ct. App. 1992)).

*Perfect v. McAndrew*, 798 N.E.2d 470, 478 (Ind. Ct. App. 2003). Parol evidence may be considered in determining whether the parties entered into a contract based on a mutual mistake of fact. *Kramer v. Focus Realty Group, LLC*, 51 N.E.3d 1240, 1243 (Ind. Ct. App. 2016).

[9] The HOA asserts that at the time the parties entered into the Agreement, they both believed that the damage settlement with the HOA's insurer would encompass only two or three roofs in the Carriage Courts community, not the twenty roofs ultimately found to be in need of replacement. But the designated evidence relied upon by the HOA in support of this argument establishes that at the time the Agreement was executed, Rocklane and the HOA were uncertain

of the extent of the storm damage, but hoped the insurer would cover *at least* two to five roofs—the implication being that a larger settlement amount was hoped for by both parties. In other words, the number of roof replacements ultimately covered by the HOA's insurer was not the essence of the agreement. Regardless of the amount the HOA's insurer ultimately paid, the HOA's obligation remained the same; that is, it would be liable for only its deductible and any upgrades it sought. This is not a situation in which "one party experienced an unexpected, unbargained-for gain while the other party experienced an unexpected, unbargained-for loss." *Wilkins*, 548 N.E.2d at 172. Rather, the bigger-than-expected settlement was a mutually beneficial resolution of uncertainties contemplated at the time the parties entered into the Agreement. Accordingly, the HOA cannot avoid its obligations under the Agreement based on the doctrine of mutual mistake.[1]

## 2. Liquidated Damages

The HOA does not dispute that, if a contract was formed, its refusal to allow Rocklane to complete the work amounted to a material breach. Instead, the HOA argues that the twenty percent cancellation fee set forth in the Agreement is an unenforceable penalty rather than a valid liquidated damages clause. Liquidated damages clauses provide for the forfeiture of a stated sum of money

---

[1] The HOA also makes a brief argument that Adkins's statement that he hoped the insurer would cover at least five roofs amounted to a misrepresentation of material fact sufficient to support a claim of constructive fraud. The statement at issue is clearly not a representation of fact, material or otherwise. Rather, Adkins simply expressed his hope that at least five roofs would be covered.

upon breach without proof of damages. *Corvee, Inc. v. French*, 943 N.E.2d 844, 846 (Ind. Ct. App. 2011). We are tolerant of liquidated damages provisions, and they are generally enforceable where the nature of the agreement is such that the damages resulting from a breach would be uncertain and difficult to ascertain. *Gershin v. Demming*, 685 N.E.2d 1125, 1127 (Ind. Ct. App. 1997). Where the stipulated sum is not greatly disproportionate to the loss likely to occur, the provision will be accepted and enforced as a liquidated damages clause. *Id.* at 1128. On the other hand, "where the sum sought to be fixed as liquidated damages is grossly disproportionate to the loss which may result from the breach, the courts will treat the sum as a penalty rather than as liquidated damages." *Id.* In determining whether a stipulated sum constitutes liquidated damages or a penalty, we consider the facts, the intentions of the parties, and the reasonableness of the stipulation under the circumstances. *Id.* "The distinction between a penalty provision and one for liquidated damages is that a penalty is imposed to secure performance of the contract and liquidated damages are to be paid in lieu of performance." *Id.* The use of specific words such as "penalty," "forfeiture," or "liquidated damages" is not controlling, but should be considered in connection with the rest of the contract to determine the nature of the provision. *Weinreb v. Fannie Mae*, 993 N.E.2d 223, 233 (Ind. Ct. App. 2013), *trans. denied*. Whether a liquidated damages clause is valid or constitutes an unenforceable penalty is a pure question of law. *Gershin*, 685 N.E.2d at 1128.

[11]     The HOA first argues that the cancellation fee provision should not be enforced because Rocklane's actual damages were reasonably ascertainable. Indeed, the HOA argues that, as a general matter, "damages for construction and repair contracts are not of the speculative nature that makes liquidated damages appropriate[.]" *Appellant's Brief* at 10-11. None of the cases the HOA cites on appeal provide support for this broad assertion. To support an award of liquidated damages, it is not necessary to prove that actual damages are impossible to calculate or even "speculative." Rather, liquidated damages awards are appropriate when actual damages are "uncertain and difficult to ascertain." *Gershin*, 685 N.E.2d at 1127. This is a significantly lower hurdle than the one the HOA seeks to erect.

[12]     We have little difficulty accepting Rocklane's argument that its actual damages resulting from the HOA's breach are uncertain and difficult to ascertain. The net profits realized from construction projects, particularly large projects like the one at issue here, are variable and may be affected by numerous factors, including fluctuating material costs and availability, labor stoppages, accidents, weather, and other delays. Because Rocklane's actual damages are not readily ascertainable, an award of liquidated damages is not inappropriate.

[13]     The HOA next argues that Rocklane's designated evidence was insufficient to establish that the twenty percent cancellation fee was not grossly disproportionate to Rocklane's actual damages. Specifically, the HOA notes that the only evidence concerning the proportionality of the fee was Burkert's affidavit, in which he averred that Rocklane's lost profits are not amenable to a

precise calculation where, as here, the company has been prevented from performing the work, but that the twenty percent cancellation fee "is a reasonable estimate of Rocklane's lost profits." *Appellant's Appendix Vol. 2* at 52. On appeal, the HOA complains that this evidence is not "independent" and argues that it is insufficient to show that the liquidated damages are "even remotely approximate" to Rocklane's lost profits. *Appellant's Brief* at 12. Thus, according to the HOA, the designated evidence was insufficient to establish that the cancellation fee was not an unenforceable penalty.

[14] As this court has explained, there is "some contradiction" in the rules relating to distinguishing liquidated damages and penalties. *Harbours Condominium Ass'n v. Hudson*, 852 N.E.2d 985, 993 (Ind. Ct. App. 2006).

> Specifically, in order to show that the sum stipulated in an agreement as liquidated damages is not "grossly disproportionate" to the loss, the party seeking to enforce the liquidated damages provision must demonstrate some proportionality between the loss and the sum established as liquidated damages. [*Gershin*, 685 N.E.2d at 1128.] Yet a "typical liquidated damages provision provides for the forfeiture of a stated sum of money without proof of damages." *Gaddis v. Stardust Hills Owners Ass'n, Inc.*, 804 N.E.2d 231, 236 (Ind. Ct. App. 2004). We resolve this apparent conundrum by looking to the purpose of liquidated damages, which . . . is to compensate for damages that would be uncertain and difficult to ascertain. *See Gershin*, 685 N.E.2d at 1127; *Harris v. Primus*, 450 N.E.2d 80, 84 (Ind. Ct. App. 1983). Thus, a party who seeks to enforce a liquidated damages clause need not prove actual damages but may be required to show a correlation between the liquidated damages and actual damages in order to assure that a sum

> charged may fairly be attributed to the breach. *See Gershin*, 685
> N.E.2d at 1127.

*Id.*

[15] Although a plaintiff seeking to enforce a liquidated damages clause need not prove actual damages, case law discussing the sufficiency of the evidence to support an award of actual damages in the form of lost profits is nevertheless instructive here. This court has often explained that lost profits need not be proven with mathematical certainty, and such damages "are not uncertain where there is testimony that, while not sufficient to put the amount beyond doubt, is sufficient to enable the factfinder to make a fair and reasonable finding as to the proper damages." *Berkel & Co. Contractors, Inc. v. Palm & Assocs, Inc.*, 814 N.E.2d 649, 659 (Ind. Ct. App. 2004). Further, this court has found the testimony of the injured party to be sufficient proof of lost profits. *See Eden United, Inc. v. Short*, 573 N.E.2d 920, 928 (Ind. Ct. App. 1991) ("The plaintiff's own reasonable testimony concerning lost profit will suffice."), *trans. denied*.

[16] If a plaintiff's testimony concerning his or her lost profits is sufficient standing alone to support an award of actual damages, such testimony is surely also sufficient to establish a mere correlation between the liquidated and actual damages. The affidavit of Burkert, one of Rocklane's owners, is sufficient to satisfy Rocklane's initial burden of proving that the liquidated damages were not grossly disproportionate to its actual damages. Because the HOA did not come forward with any contrary evidence to establish a genuine issue of

material fact as to the proportionality of the liquidated damages amount, summary judgment was appropriate.

[17] Citing a handful of this court's older cases, the HOA also argues that the cancellation fee is a penalty because under the terms of the Agreement, the HOA would be liable for the whole amount even in the event of a partial or inconsequential breach. *See Mandle v. Owens*, 330 N.E.2d 362, 365 (Ind. Ct. App. 1975) (explaining that "where there are covenants of varied kinds and importance, and the sum named is payable for the breach of any, even the least, it is a penalty"), *trans. denied*; *Beiser v. Kerr*, 20 N.E.2d 666, 669 (Ind. Ct. App. 1939) (explaining that "if the stipulation to pay a certain sum of money upon a default . . . renders the defaulting party liable in the same amount at all events, both when his failure to perform is complete, and when it is only partial, the sum must be regarded as a penalty"); *Tudor v. Beath*, 131 N.E. 848, 851 (Ind. Ct. App. 1921) (concluding that a stipulated sum was an unenforceable penalty because it would be forfeited regardless of the seriousness of the breach and the amount of actual damages resulting therefrom, and reasoning that "being a penalty as to one of the stipulations, it must be held to be a penalty as to all"). *But see* Restatement (Second) of Contracts § 356 cmt. b (1981) ("The amount fixed is reasonable to the extent that it approximates the actual loss that has resulted from the particular breach, even though it may not approximate the loss that might have been anticipated under other possible breaches.").

[18] This is not, however, a situation in which the contract provides for the payment of a stipulated sum in event of any breach, regardless of its materiality. Rather,

the Agreement provides for a twenty percent "cancellation fee" for "[f]ailure to complete this contract . . . except for occurrences beyond [the HOA's] control." *Appellant's Appendix Vol. 2* at 14. Contrary to the HOA's assertion on appeal, immaterial breaches, such as the HOA's failure to include Rocklane's name and tax identification number on any bank drafts as set forth in the Agreement, would not constitute failure to complete the contract so as to trigger the application of the cancellation fee.

[19] There is no question that the HOA breached the Agreement and, for the reasons set forth above, we conclude that the cancellation fee set forth in the Agreement is a valid and enforceable liquidated damages clause. Consequently, summary judgment was properly entered in Rocklane's favor.

### 3. Cross Appeal: Attorney Fees

[20] On cross-appeal, Rocklane argues that the trial court abused its discretion in awarding only a portion of its requested attorney fees. Indiana follows the American Rule, which requires each party to pay his or her own attorney fees. *Rogers Group, Inc. v. Diamond Builders, LLC*, 816 N.E.2d 415, 420 (Ind. Ct. App. 2004), *trans. denied*. The parties may, however, shift the obligation to pay attorney fees through contract or agreement, and such agreements will be enforced as long as they are not contrary to law or public policy. *Id.* Nevertheless, even where attorney fees are awarded pursuant to a contract, such fees must be reasonable. *Corvee*, 943 N.E.2d at 847. Trial courts are afforded discretion in determining reasonable attorney fees, and we will reverse such an

award only if it is clearly against the logic and effect of the facts and circumstances presented. *Walton v. Claybridge Homeowners Ass'n, Inc.*, 825 N.E.2d 818, 826 (Ind. Ct. App. 2005).

[21] The parties do not dispute that, having prevailed on the merits, Rocklane is entitled to attorney fees under the Agreement. Only the amount of the award is at issue here. "We review the amount a trial court awards for attorney fees for an abuse of discretion." *Cavallo v. Allied Physicians of Michiana, LLC*, 42 N.E.3d 995, 1009 (Ind. Ct. App. 2015). The trial court may consider a number of factors in determining the reasonableness of a fee, but the hours worked and the rate charged are a common starting point. *Id.* The court may also consider the responsibility of the parties in incurring the attorney fees, and the trial judge may use his or her personal expertise in determining reasonable attorney fees. *Id.* Indiana Professional Conduct Rule 1.5(a) also sets forth a helpful, non-exhaustive list of factors for a trial court to consider in evaluating the reasonableness of attorney fees. *Id.* at 1009-10.

[22] At the hearing on attorney fees, Rocklane's counsel submitted a detailed attorney fee affidavit indicating that he had worked a total of fifty-eight hours on the case, resulting in fees totaling $14,880.50.[2] The HOA presented no evidence and made no argument that the attorney fees requested were unreasonable. Nevertheless, the trial court awarded only $2500 in attorney

---

[2] This total included counsel's work in responding to a premature appeal filed by the HOA, which this court dismissed without prejudice.

fees—less than seventeen percent of the amount set forth in the affidavit—and entered no findings supporting its determination that $2500 would reasonably compensate Rocklane for its attorney fees. Because the trial court did not enter findings and we are unable to discern a basis for its judgment, we find the award to be an abuse of discretion and remand with instructions to determine reasonable attorney fees. *See Boonville Convalescent Ctr., Inc. v. Cloverleaf Healthcare Servs., Inc.*, 834 N.E.2d 1116, 1128 (Ind. Ct. App. 2005) (remanding for calculation of reasonable attorney fees where trial court, without making findings to support its decision, awarded attorney fees far below the amount requested and supported by the prevailing party's evidence), *trans. denied*. We express no opinion on what amount might constitute reasonable attorney fees in this case.

[23] Judgment affirmed in part, reversed in part, and remanded with instructions.

[24] Baker, J. and Bailey, J., concur.