



FILED

Dec 18 2019, 2:05 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Indiana Supreme Court

Supreme Court Case No. 18S-PL-00437

## American Consulting, Inc. d/b/a American Structurepoint, Inc.,

*Appellant-Plaintiff/Cross-Appellee*,

–v–

## Hannum Wagle & Cline Engineering, Inc., d/b/a HWC Engineering, Inc., Marlin A. Knowles, Jr., Jonathan A. Day, David Lancet, and Tom Mobley,

*Appellees-Defendants/Cross-Appellants*.

---

Argued: October 4, 2018 | Decided: December 18, 2019

Appeal from the Marion Superior Court
No. 49D01-1503-PL-7463

The Honorable Heather A. Welch, Special Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 49A02-1611-PL-2606

---

**Opinion by Justice David**

Chief Justice Rush and Justice Goff concur.

Justice Slaughter concurs in part, dissents in part with separate opinion in
which Justice Massa joins.

**David, Justice.**

This is an action by an employer against several of its former employees and their new employer for alleged violations of the former employees' noncompetition and non-solicitation agreements. The employer brought various claims, including tortious interference with a contractual relationship and breach of contract claims, against its former employees. At issue, among other things, is whether the liquidated damages provisions in the employees' contracts are enforceable. We hold that they are not. With regard to American Structurepoint, Inc.'s tortious interference claims, we find that the trial court correctly held that summary judgment was not appropriate because there remains an issue of material fact. Accordingly, we affirm the trial court on all issues.

## Facts and Procedural History

Defendants Marlin Knowles, Jonathan Day and David Lancet were all previously employed by Plaintiff, American Structurepoint, Inc. ("ASI").[1] Knowles served as ASI's Vice President of Sales, and as a condition of his employment, he executed a contract that contained covenants restricting him from both customer and employee solicitation should he leave his employment with ASI. That is, Knowles agreed that for two years after his employment, he would not sell, provide, try to sell or provide or assist any person or entity in the sale or provision of any competing products or services to ASI's customers with whom Knowles had any business contact with on behalf of ASI during the two years prior to separation. He agreed that if he breached this agreement and such a breach resulted in termination, withdrawal or reduction of a client's business with ASI, he would pay liquidated damages in an amount equal to 45% of all fees and other amounts that ASI billed to the customer during the twelve months

---

[1] Defendant Tom Mobley was also previously employed by ASI and made a party to the underlying suit. However, the trial court granted summary judgment in his favor on all issues pending against him. Although he is listed in the caption to the appeal, the briefing before the Court of Appeals and this Court does not address the claims against him. Accordingly, we will not be addressing the claims against him in this opinion.

prior to the breach. The contract further precluded Knowles from causing an employee to end their employment with ASI, and if he breached this provision, he agreed to pay liquidated damages equal to 50% of the employee's pay from ASI during the twelve months prior to the breach.

Day and Lancet, who were both resident project representatives at ASI, also executed agreements that precluded them from hiring or employing ASI employees. They agreed that if they breached their agreements, they would pay liquidated damages in an amount equal to 100% of that employee's pay from ASI during the twelve months prior to breach.

All of the contracts at issue provide that the liquidated damages provisions are a reasonable estimate of the damages ASI will suffer and do not constitute a penalty.

Knowles left ASI to work for a competitor, Hannum Wagle & Cline Engineering, Inc., d/b/a HWC Engineering, Inc. ("HWC"). Lancet and Day later joined him. Evidence favorable to ASI shows that Knowles, Day and Lancet engaged in activities in an effort to recruit ASI employees, and they successfully recruited seven ASI employees. Additionally, after joining ASI, Knowles networked with various ASI client contacts and signed various contracts with them.

ASI sued Knowles, Lancet and Day, as well as their employer HWC (collectively, "Defendants"), alleging various claims including breach of contract and tortious interference with ASI's contractual and business relationships. Defendants moved for summary judgment, and, in relevant part, the trial court granted summary judgment for Defendants on the issue of liquidated damages, finding that the liquidated damages clauses were unenforceable as a matter of law. As for the tortious interference with a contractual relationship claim, the trial court granted summary judgment with regard to ASI's contracts with Day. However, it found that there were issues of material fact regarding ASI's contracts with Knowles and Lancet.

On interlocutory appeal, our Court of Appeals affirmed the trial court on the tortious interference issue[2] but reversed the trial court on the liquidated damages issue finding these provisions were enforceable. *Am. Consulting, Inc. v. Hannum Wagle & Cline Eng'g, Inc.*, 104 N.E.3d 573, 576 (Ind. Ct. App. 2018), *transfer granted, opinion vacated*, 110 N.E.3d 1146 (Ind. 2018). Judge Riley dissented in part, believing that the liquidated damages provisions were unenforceable penalties. *Id.* at 596 (Riley, J., dissenting). We granted transfer, thereby vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A). For reasons discussed herein, we affirm the trial court on both issues and remand for further proceedings.

## Standard of Review

When reviewing a summary judgment order, we stand in the shoes of the trial court. *Matter of Supervised Estate of Kent*, 99 N.E.3d 634, 637 (Ind. 2018) (citation omitted). Summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C).

## Discussion and Decision

## I. The liquidated damages provisions are unenforceable penalties.

### A. Defendants have shown that the provisions are facially unreasonable.

At issue is whether the liquidated damages provisions in the Knowles, Day and Lancet agreements constitute unenforceable penalties.

---

[2] The Court of Appeals opinion incorrectly states that summary judgment was granted on this issue as to the Lancet Agreement, but it was actually denied.

Defendants argued, and the trial court determined, that they are. Specifically, Defendants argue the liquidated damages in this case are not fairly correlated to ASI's actual loss and therefore constitute a penalty. For its part, ASI agrees with the Court of Appeals majority: because the agreements at issue were freely negotiated and the amount of damages resulting from the contract breaches are difficult to ascertain, these liquidated damages clauses are enforceable. For reasons discussed herein, we agree with the Defendants and find that the liquidated damages provisions in this particular case are unenforceable penalties.

"Liquidated damages" refers to a specific sum of money that has been stipulated by parties to a contract as "the amount of damages to be recovered by one party for a breach by the other, whether it exceeds or falls short of actual damages." *Time Warner Entm't Co., L.P., v. Whiteman*, 802 N.E.2d 886, 893 (Ind. 2004). "A typical liquidated damages provision provides for the forfeiture of a stated sum of money upon breach without proof of damages." *Gershin v. Demming*, 685 N.E.2d 1125, 1127 (Ind. Ct. App. 1997). Reasonable liquidated damages provisions are permitted. *Skendzel v. Marshall*, 261 Ind. 226, 232, 301 N.E.2d 641, 645 (1973), *reh'g denied*. "While liquidated damages clauses are ordinarily enforceable, contractual provisions that constitute penalties are not." *Weinreb v. Fannie Mae*, 993 N.E.2d 223, 232-33 (Ind. Ct. App. 2013). Whether a contract provision providing for liquidated damages is an unenforceable penalty is a question of law for the court to decide. *Corvee, Inc. v. French*, 943 N.E.2d 844, 847 (Ind. Ct. App. 2011).

"We have refused to enforce contracts when their provisions are unconscionable or when they offend the laws of this State, but there must be a clear showing by the party urging it that the contract provision was nothing more than mere penalty." *Court Rooms of America, Inc. v. Diefenbach*, 425 N.E.2d 122, 124 (Ind. 1981). As the moving party, Defendants have the initial burden of demonstrating that the contract provisions at issue are unenforceable penalties. Here, the facts regarding the contents and financial consequences of the liquidated damages clauses are undisputed.

The facts show that the employee solicitation restriction in the Knowles agreement provides that he pay 50% of the annual salary of each

employee that leaves ASI due to his actions. The trial court found that this would amount to approximately $272,165 in damages. The Day and Lancet agreements provide that they must each pay 100% of the salary for each employee that leaves ASI due to their actions. This would amount to approximately $238,374 for Day and $176,813 for Lancet. The client solicitation restriction in the Knowles agreement provides that he is responsible for 45% of ASI's prior 12 months of revenue generated by the client if Knowles violates the agreement and that client purchases services from HWC. The trial court found that these damages could be in the range of millions of dollars.

While ASI is correct that the damages in this case are difficult to ascertain and this Court has previously noted its unwillingness to interfere in the freely negotiated contracts of the parties (*see Time Warner*, 802 N.E.2d at 886), this alone is not enough to enforce a liquidated damages provision. The liquidated damages provisions related to employee recruitment in this case are facially problematic for several reasons.[3]

First, it is not clear how an employee's salary for the prior year correlates to the loss to the company as salary alone is not reflective of revenue to ASI. While the salary of an employee factors into revenue to some extent, it is not the only variable that determines revenue, and ASI could hire other employees. It is also not clear why Knowles, who held a higher rank and made more money than Day or Lancet, is responsible for 50% of a recruited employee's salary while Day and Lancet are responsible for 100% of it. Additionally, as Judge Riley aptly noted in her dissent in the Court of Appeals below, because several employees were recruited in violation of all three agreements at issue, ASI was seeking 250% of their respective salaries. Even if we were to assume that the lost employee's salary was an appropriate measure of damages, it is highly

---

[3] While the dissent believes we are relieving the Defendants of their burden on summary judgment, this is not the case. Instead, we are acknowledging that Defendants' burden here was not especially hard to meet given the flaws in the parties' contract.

unlikely it would cost ASI 250% of a recruited employee's salary to replace them.

Prior case law is also instructive. In cases where liquidated damages were enforceable in an employment context, the sum was certain and reasonably tied to the actual losses. For instance, in *Raymundo v. Hammond Clinic Ass'n.*, 449 N.E.2d 276, 284 (Ind. 1983) and *Harris v. Primus*, 450 N.E.2d 80, 85-86 (Ind. Ct. App. 1983), our courts enforced liquidated damages in two cases where doctors breached their employment contracts. In each of those cases, the doctors were subject to liquidated damages clauses that set forth a specific sum for the breach, both $25,000, which represented a portion of the revenue each doctor earned prior to the breach. Unlike those cases, the liquidated damages clauses in the present case: 1) do not provide for payment of a specific sum, but rather, provide for a percentage of a yet to be ascertained sum; 2) the percentages provided for in the provisions are not tied to ASI's actual lost revenue from losing its employees; and 3) the liquidated damages are not a portion of Defendant's salaries; they far exceed the salaries of the Defendants.

Further, in cases where the liquidated damages in an employment contract were not enforceable, the liquidated damages provision applied the same punishment for a broad range of conduct and served to punish the breaching employee. *See Hahn v. Drees, Perugini & Co.*, 581 N.E.2d 457 (Ind. Ct. App. 1991); *Seach v. Richards, Dieterle & Co.*, 439 N.E.2d 208 (Ind. Ct. App. 1982). Here, Knowles' contract provides that he must pay liquidated damages if he solicits or recruits, or assists anyone else in soliciting or recruiting, ASI employees. It also punishes him whether he hires or merely attempts to hire an ASI employee. As for Day and Lancet, two hourly employees, their contracts provide that they pay damages in excess of their own salaries should they solicit ASI employees. The liquidated damages provisions would not serve as a mechanism for Defendants to pay those damages instead of perform the contract. Thus, on their face, it seems these penalties are meant to secure performance and punish the breaching party, not to compensate ASI's actual losses.

As for Knowles' agreement to not solicit ASI's clients, the penalty of 45% of the prior year's revenue from that client to ASI is in no way tied to

ASI's actual losses. As discussed by Judge Riley in her dissent, ASI is seeking damages for contracts it was ineligible for and the contracts gained by HWC involving ASI clients are far less valuable than those ASI previously had with the client. Thus, this liquidated damages provision is a penalty meant to secure performance and one that is not proportional to ASI's actual losses.

Accordingly, in light of the evidence in the record and our case law, we find that Defendants met their initial burden of showing that the liquidated damages in this case are facially unreasonable and as such, the burden is on ASI to show an issue of material fact. That is, it must show that the liquidated damages are somehow correlated with the actual damages and thus, an issue of fact remains as to whether the liquidated damages are unenforceable.

## B. ASI has not shown the liquidated damages are correlated to their actual losses.

While "a party who seeks to enforce a liquidated damages clause need not prove actual damages," it "may be required to show a correlation between the liquidated damages and actual damages in order to assure that a sum charged may fairly be attributed to the breach." *Harbours Condo. Ass'n v. Hudson*, 852 N.E.2d 985, 993 (Ind. Ct. App. 2006). When liquidated damages are grossly disproportionate to the loss that results from the breach or are unconscionably in excess of the loss sought to be asserted, appellate courts will treat the sum as an unenforceable penalty rather than as liquidated damages. *Art Country Squire, L.L.C. v. Inland Mortg. Corp.*, 745 N.E.2d 885, 891 (Ind. Ct. App. 2001) (quotation and citation omitted). "The distinction between a penalty provision and one for liquidated damages is that a penalty is imposed to secure performance of the contract and liquidated damages are to be paid in lieu of performance." *Gershin*, 685 N.E.2d at 1125 (citation omitted). When determining whether a provision constitutes liquidated damages or an unenforceable penalty, appellate courts "consider the facts, the intention of the parties and the reasonableness of the stipulation under the circumstances of the case." *Art Country Squire*, 745 N.E.2d at 891.

For its part, ASI argues that the damages provisions are in fact reasonable forecasts of the loss they suffered. They argue that they lost seven valuable employees who generated revenue over a million dollars. However, they introduced no evidence that they could not replace these employees or their billing, in whole or in part. Also, as discussed above, it is not clear how a portion of the recruited employee's salary is correlated with damages. ASI's position assumes replacing an employee who made $40,000 costs $20,000 if recruited by Knowles and $40,000 if recruited by Lancet or Day, despite how much the replacement employee is actually paid or how much revenue they generate, and an employee who made $60,000 would cost $30,000 to $60,000 to replace. Certainly, the person who recruited an employee is in no way tied to the value of the employee or the loss suffered by ASI. ASI has not demonstrated otherwise.

Thus, even accepting ASI's position that it was damaged by Defendants' actions, that those damages are hard to calculate, that the employees who were recruited were valuable and that ASI incurred costs to replace these employees, the liquidated damages provisions as written are not correlated to the actual loss, and ASI offers no reasonable explanation or nexus between the two. For instance, ASI could have offered evidence regarding how much they spent on the employee recruitment process or other evidence demonstrating some correlation between the liquidated damages provision and actual damages. It did not.

As for damages resulting from Knowles' solicitation of ASI clients, ASI has put forth evidence that since Knowles arrived at HWC, it booked projects with ASI clients with revenues totaling over $14 million. This would make Knowles liable for millions of dollars in liquated damages based on a broad range of conduct. As the trial court stated:

> Given the potential activities that Knowles could engage in to violate the [ ] Agreement, ASI has provided no rational relation to how damages arising from such actions could reasonably result in damages nearly 45% of the client's previous annual business with ASI. The possibility of several millions of dollars' worth of damages appears to have been included to serve more

as a threat to Knowles against breach than a mutual
understanding of what likely damages would result in the
event of a breach. . . .

(App. Vol. II at 55; Trial Court Order at 35.) We agree that this provision
is punitive in nature, and ASI has not shown the correlation between its
actual damages and the liquidated damages sought. To be clear, ASI is
asserting that if it had a contract with a client for $1 million immediately
prior to Knowles' departure from ASI, and after Knowles joined HWC it
obtained a contract with that same client for $100, Knowles would be
responsible for $450,000 in damages. This would be a windfall to ASI and
a penalty to Knowles. The liquidated damages provision as written is too
broad and captures too much conduct to be construed as a reasonable
measure of damages resulting from a breach.

In sum, we find that all of the liquidated damages provisions at issue
are unenforceable penalties. ASI may seek its actual damages for its
breach of contract claims.

## II. An issue of material fact remains as to ASI's tortious interference with a contractual relationship claim.

In order to recover for tortious interference with a contractual
relationship, a plaintiff must show: 1) existence of a valid and enforceable
contract; 2) defendant's knowledge of the existence of the contract; 3)
defendant's intentional inducement of breach of the contract; 4) the
absence of justification; and 5) damages resulting from defendant's
wrongful inducement of the breach. *Winkler v. V.G. Reed & Sons, Inc.*, 638
N.E.2d 1228, 1235 (Ind. 1994).

In this case, the parties disagree about how the absence of justification
element must be proven. The Defendants argue that in order to prove
absence of justification, the defendant must act intentionally and without
a legitimate business purpose and that "the breach is malicious and
exclusively directed to the injury and damage of another." *Morgan Asset*

*Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1272 (Ind. Ct. App. 2000) (citation omitted). ASI argues that the appropriate standard is whether the conduct at issue is fair and reasonable and believes application of the Restatement factors is appropriate. *See Coca-Cola Co. v. Babyback's Int'l, Inc.*, 806 N.E.2d 37, 49-52 (Ind. Ct. App. 2004), *vacated on other grounds by Coca-Cola v. Babyback's Int'l, Inc.*, 841 N.E.2d 557, 560 (Ind. 2006) (outlining the five Restatement elements for tortious interference with a business relationship). In the opinion below, our Court of Appeals acknowledged the differing approaches and found that the Restatement factors have consistently been applied to tortious interference cases. It found analyzing these factors would necessarily include analysis of both whether defendant acted maliciously and without a legitimate business purpose and whether defendant acted fairly and reasonably under the circumstances.

We find that no matter which of the two standards for what constitutes the absence of justification element for tortious interference with a contractual relationship is applied to the facts of this case, there remains an issue of material fact so as to preclude summary judgment. As our Court of Appeals majority aptly noted, there is both evidence that HWC has a legitimate business purpose in recruiting ASI employees and also evidence that HWC targeted ASI for an improper purpose. In light of this conflicting evidence and because of our summary judgment standard, we find the trial court properly denied summary judgment on ASI's claims of tortious interference.

# Conclusion

We hold that the liquidated damages provisions in this case are unenforceable penalties. We also hold that there remains an issue of material fact as to whether Defendants tortiously interfered with ASI's contracts. We affirm the trial court and remand for proceedings consistent with this opinion.

Rush, C.J., and Goff, J., concur.
Slaughter, J., concurs in part, dissents in part with separate opinion in which Massa, J., joins.

ATTORNEYS FOR APPELLANT
Michael A. Wukmer
Mary Nold Larimore
Mark R. Alson
Robert A. Jorczak
Ice Miller LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Bryan H. Babb
David L. Swider
Andrew M. McNeil
Philip R. Zimmerly
Bose McKinney & Evans LLP
Indianapolis, Indiana

**Slaughter, J., concurring in part, dissenting in part.**

I respectfully dissent from the Court's conclusion that ASI cannot enforce its contracts and collect the liquidated damages that the parties agreed would be warranted in case of breach. I would affirm the court of appeals on this issue and reverse summary judgment for the HWC Defendants. It was their burden, substantively, as the parties challenging the legality of the bargains they struck, to prove the liquidated-damages provisions are unenforceable penalties. And it was their burden, procedurally, as movants on summary judgment, to establish that ASI cannot prove at trial even a correlation between the liquidated damages called for in the parties' agreements and ASI's actual damages resulting from the HWC Defendants' respective breaches. Yet the HWC Defendants failed to meet these burdens. The Court thus errs in reinstating summary judgment for them on this issue. The rest of the Court's opinion I join.

A

Our precedent has long recognized that restrictive covenants in an employment agreement are well suited to an award of liquidated damages "because it is practically impossible to fix the exact amount of damages resulting from a breach of the agreement." *Raymundo v. Hammond Clinic Ass'n*, 449 N.E.2d 276, 283–84 (Ind. 1983) (citation omitted). In such cases, we dispense with the usual presumption that the remedy for a breach of contract is limited to actual damages. *Id.* at 284. When the resulting damages will likely be uncertain or hard to quantify, we will "almost always uphold" liquidated damages "unless the amount is grossly disproportionate to the loss and far beyond any possible damages that could be incurred." *Id*.

The Court today acknowledges this precedent, reciting correctly that the HWC Defendants bore the initial burden of showing that the disputed liquidated-damages provisions are unenforceable penalties. But rather than explaining how each of these Defendants met his respective burden here, the Court essentially relieves Defendants of those obligations by concluding that the liquidated-damages clauses are "problematic on their faces". These clauses are "facially unreasonable", we are told, because the Court decides there can be no basis on this record for tying liquidated

damages to the lost clients' revenues or the former employees' salaries. According to the Court, the parties' disputed agreements contain "flaws" that made the HWC Defendants' burdens "not especially hard to meet". And because the Court is left with questions about what it perceives as excessive liquidated damages disproportionate to what it speculates are ASI's likely injuries, it leaps to the unwarranted conclusion that a trial is unnecessary to allow ASI to prove that the parties' agreed damages are in line with ASI's actual damages.

The Court's conclusion that the liquidated-damages provisions are facially disproportionate ignores four substantive considerations:

- each liquidated-damages provision includes a causation requirement;
- a employee's value to an employer—and the resulting loss when the employee leaves—is reflected by that employee's salary;
- ASI is seeking individualized damages for separate breaches of contract; and
- there is nothing inappropriate about a high-level, equity-owning employee having contractual restrictions different from those of lower-level employees.

First, the Court ignores the causation requirements in each liquidated-damages provision by proceeding as if ASI is entitled to liquidated damages merely by alleging that an HWC Defendant breached his agreement with ASI. But that is not what these agreements say. The operative Day and Lancet agreements each contain the following employee non-solicitation provision, which includes a causation requirement:

> You acknowledge that if you engage in conduct that violates these restrictions and **causes** an employee to terminate his/her employment with [ASI], then immediately upon demand of [ASI], you shall pay to [ASI] liquidated damages in an amount equal to 100% of such employee's annual salary for the preceding calendar year[.] (Emphasis added.)

In other words, ASI must first establish that a restricted employee breached his contract by soliciting an ASI employee to leave the company. Then it must show that the recruited employee left ASI, and that the restricted employee's breach caused the departure. ASI must make that showing at trial before it can recover liquidated damages from a breaching employee.

The Knowles agreement likewise contains an employee non-solicitation provision with a causation requirement:

> In the event [Knowles] hires or employs, or assists any person or entity in the hiring or employment of, any employee of [ASI] in violation of the restrictions set forth in Section 9 e of this Agreement, or otherwise engages in any conduct that violates Section 9 e **which results in** an employee terminating his/her employment with [ASI] (each such incident an "<u>Employee Loss Breach</u>"), then, with respect to such Employee Loss Breach, [Knowles] shall pay to [ASI] liquidated damages in an amount equal to fifty percent (50%) of such terminating employee's total compensation from [ASI] for the twelve (12) months immediately preceding such employee's termination of employment[.] (Emphasis added.)

In addition, the Knowles agreement contains a client non-recruitment provision requiring that ASI prove any lost business was "as a result" of Knowles's breach:

> In the event [Knowles] breaches Section 9 a, Section 9 b or Section 9 c of this Agreement and the customer to which such breach pertains terminates, withdraws or reduces its business with [ASI] or purchases any Competing Products/Services from [Knowles] or any entity with which [Knowles] is then employed or otherwise affiliated **as a result of** such breach (each such incident a "<u>Company Customer Loss Breach</u>"), then, with respect to each such Company Customer Loss Breach, [Knowles] shall pay to [ASI] liquidated damages in an amount

equal to forty five percent (45%) of all fees and other amounts that [ASI] billed to such customer during the 12-month period immediately preceding such breach[.] (Emphasis added.)

These causation requirements refute the Court's conclusion that the liquidated-damages provisions are facially punitive. The HWC Defendants will not automatically be subject to what the Court considers excessive liquidated-damages awards unless ASI proves at trial that the Defendants breached their respective agreements, and that these breaches caused employees to leave ASI or ASI's customers to take their business elsewhere.

Second, the Court fails to recognize that an employee's value to a company is tied to that employee's salary. Here, ASI identified seven employees lost to HWC and seeks liquidated damages under the parties' respective agreements that tie liquidated damages to the lost employees' salaries at ASI. The Court responds that "it is not clear how an employee's salary for the prior year correlates to the loss to the company", reasoning that "salary alone is not reflective of revenue to ASI", and "ASI could hire other employees." But the fact that ASI cannot quantify its costs to recruit and train new employees or determine the revenues lost in the two years after these seven employees left ASI does not mean that these resulting costs and lost revenues are zero. Indeed, as recited in the parties' contracts, the resulting losses are not easily quantified, which is why the parties agreed that liquidated damages would be warranted in case of breach and why ASI should have the opportunity to prove at trial that its actual damages are correlated to the parties' agreed damages.

The Court's contrary rationale overlooks the economic truism that salary is highly correlated with value and ignores that those employees more highly valued are more highly compensated, and vice versa. The Court's failure to appreciate the relationship between an employee's salary and value to the employer will raise more than a few eyebrows and will only reinforce the perception that courts occupy an insular role immune from the rough-and-tumble market forces that are the lifeblood of our economy. True, ASI may be able to hire new employees to replace those workers allegedly pilfered by HWC. But no one should expect such

new hires to be as productive—meaning, as profitable—as the former employees or ASI presumably would have hired them already.

Consider, for example, a law-firm partner with a substantial book of business. Unlike many participants within our economy, lawyers cannot ethically be tied to one firm through contractual restraints such as those at issue here, Ind. Professional Conduct Rule 5.6, so they are free agents who generally can seek the highest, most productive use of their human capital without limitation. Especially as market forces intrude ever deeper into law-firm economics, that partner likely commands a salary commensurate with his profitability, or he would take his practice—including his clients—elsewhere. Were he to do so, it is cold comfort that his former firm could hire a new, wet-behind-the-ears lawyer for a fraction of the former partner's salary. Of relevance here, even if ASI hires new employees to replace those lost to HWC, that does not mean that substituting the new employees for the former employees will leave ASI just as well off.

Third, the Court misconstrues the damages ASI seeks and uses this misapprehension to support its argument that the liquidated damages are excessive. Despite the parties' acknowledged difficulty quantifying actual damages for breaches of the very non-compete and non-solicitation provisions at issue here, the Court speculates that it is "highly unlikely it would cost ASI 250% of a recruited employee's salary to replace" the former employees. But that misstates the issue. ASI is not seeking 250 percent of some lost employees' salaries. It is seeking 50 percent, 100 percent, and 100 percent of what it claims are three separate breaches of contract by Knowles, Day, and Lancet. As discussed, the contracts entitle ASI to recover those sums only if it can prove the defendants breached their agreements with ASI and that the breaches caused the employees to leave ASI. By lumping these three percentages together, the Court tries to characterize ASI's claim as an unreasonable penalty. Also, the Court cites nothing to support its conjecture that 250 percent of the former employees' salaries is excessive on this record. What is missing here is ASI's actual loss due to the breaches. Even the trial court concluded that ASI's actual damages are a disputed issue of fact unsuitable for summary judgment. The trial court did not identify either a specific amount or even

a potential range for ASI's actual damages. And if actual damages are undetermined, the trial court could not have conducted the required proportionality test to determine whether the stipulated damages were "grossly disproportionate" to actual damages. And neither can this Court on appeal.

It is at least plausible to believe—and a reasonable jury could so find—that ASI's actual damages due to the lost employees amount to some combination of ASI's costs to train these former employees; plus the costs to train any new, successor employees; plus the foregone profits the former employees would have generated for ASI had they not jumped ship; less the profits any successor employees did or will earn for ASI—all adjusted to a present value. In lieu of such a formula embracing these variables, as a proxy for ASI's actual damages, the parties opted instead for a more simplified liquidated-damages calculation based on a percentage of each lost employee's salary. On the current record, it is far from clear that the parties' agreed calculation is so "grossly disproportionate" to ASI's actual damages that it amounts to an unenforceable penalty as a matter of law. And, of relevance here, the HWC Defendants failed to make that case, disregarding their burden to do just that.

Fourth, the Court concludes that the agreements are punitive because they treat Knowles differently than Day and Lancet, emphasizing that Knowles is liable for 50 percent of a lost employee's salary while Day and Lancet are each liable for 100 percent of such salary. But there is nothing facially untoward about assigning liability that way. Knowles had a different contract reflecting his different responsibilities to ASI. Knowles was a high-level employee with an equity interest in the company. Unlike Day and Lancet, project managers who were barred from soliciting employees only, Knowles could solicit neither ASI's employees nor its customers. Indeed, Knowles was liable for 45 percent of lost revenues if his breach of the client non-solicitation clause caused an ASI customer to take its business elsewhere. The more onerous restrictions against Knowles likely reflected his stature within the company and his access to, and influence over, ASI's key clients and employees.

The bottom line is that these four issues—causation, value, damages, and different treatment—are factual questions for a factfinder to decide at trial, not legal questions for our Court to decide summarily as a matter of law.

B

The other reason the burdens belong to the HWC Defendants on this record is this case's procedural posture—an appeal from a motion for summary judgment they filed. As movants, the HWC Defendants had to prove the agreed liquidated damages are penalties that bear no relation to ASI's likely injury. It was not ASI's burden, as non-movant, to disprove these things. Thus, the HWC Defendants needed to establish both that the liquidated damages are "grossly disproportionate" to ASI's likely loss resulting from the breach, *Raymundo*, 449 N.E.2d at 284, and that ASI could not sustain its burden at trial of proving a correlation between the liquidated damages and its actual losses. To be sure, whether a liquidated-damages clause is an unenforceable penalty is a question of law for the courts. But that legal question turns on factual considerations, as the court of appeals correctly held. "Thus, even though the question is one of law, it may require resolution of underlying factual issues." *American Consulting, Inc. v. Hannum Wagle & Cline Eng'g, Inc.*, 104 N.E.3d 573, 586 (Ind. Ct. App. 2018) (quoting *Art Country Squire, L.L.C. v. Inland Mortg. Corp.*, 745 N.E.2d 885, 891 (Ind. Ct. App. 2001)), trans. granted. Here, the HWC Defendants did not satisfy their legal burden. As the court of appeals observed, whether the HWC Defendants caused the former employees to leave ASI or the former customers to reduce their business with ASI are questions of fact not suitable for summary judgment. 104 N.E.3d at 591.

Today's holding represents a new benchmark for applying what we have called our "heightened" summary-judgment standard from *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). *Hughley*, of course, observed that summary judgment is a "blunt . . . instrument", *id*. (citation omitted), that summary judgment is not warranted merely because the non-movant may appear "unlikely to prevail at trial", *id*. at 1004 (citation omitted), and that our state's summary-judgment policy—in contrast to federal practice—"consciously errs on the side of letting marginal cases proceed to trial on

the merits, rather than risk short-circuiting meritorious claims." *Id*. That was then.

Now, five years later, the Court reinstates summary judgment for the movant-defendants and against the party with the burden of proof at trial—and, in the process, relieves the movants of their threshold burden on summary judgment to prove that the liquidated-damages provisions are unenforceable penalties. If, as the Court holds, the HWC Defendants' burden here was "not especially hard to meet" given perceived "flaws" in the parties' agreements, this lowered bar for satisfying the movant-defendants' obligation on summary judgment represents a de facto embrace of the federal summary-judgment standard and leaves *Hughley* a distinct state-law standard in name only.

C

The Court today ignores not only the bargains these parties struck, but also (at least in application) the well-settled law of liquidated damages in Indiana. In so doing, its opinion creates more uncertainty than it resolves, and calls into question which liquidated-damages clauses will be enforceable going forward and when (if ever) the inevitable disputes over their enforceability will survive summary judgment.

If we are going to make wholesale changes to the law of liquidated damages, we should move in the opposite direction from the course today's opinion charts. Rather than condemning such damages when judges conclude they are facially problematic, courts should get out of the business of deciding whether the parties' estimate of the harm underlying liquidated damages is reasonable. See, e.g., *XCO Int'l, Inc. v. Pacific Scientific Co.*, 369 F.3d 998, 1001 (7th Cir. 2004). As Judge Posner explains, "it is hard to see why the parties shouldn't be allowed to substitute their own ex ante determination for the ex post determination of a court." *Id*. Under that view, damages are "just another contract provision that parties would be permitted to negotiate under the general rubric of freedom of contract." *Id*. He continues: "One could even think of a liquidated damages clause as a partial settlement, as in cases in which damages are stipulated and trial confined to liability issues." *Id*.

This approach to liquidated damages here would have the virtue of honoring the parties' freedom of contract, including their settlement of a disputed issue it has taken our Court more than a year to resolve. Even if this alternative view of liquidated damages did not apply across the board in every situation, it would be a far better approach than today's methodology with its varied applications and uncertain outcomes from case to case.

For these reasons, I respectfully dissent from that part of the Court's decision affirming summary judgment for the HWC Defendants and against ASI on its claims for liquidated damages. We should reverse the trial court's judgment on this issue and remand for trial.

Massa, J., joins.